## JOHNSON COMPANY *v.* WHARTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 114. Argued November 24, 1893. — Decided March 5, 1894.

A judgment recovered in a Circuit Court of the United States in favor of the plaintiff by the owner of a patent right in an action against a licensee to recover royalties on sales of the patented article, where the sole defence set up was that the articles manufactured and sold by the defendant were not covered by the patent, in which the amount recovered was not sufficient to permit a review in this court, is a bar to an action in the same Circuit Court by the same plaintiff against the same defendant, to recover like royalties on other like sales where the same defence is set up, and no other, and the amount involved is sufficient to authorize a review here.

By written agreement executed November 24, 1885, between William Wharton, Jr., & Co., a limited partnership association, and the Johnson Steel Street Rail Company, a corporation — to be hereafter referred to as the Wharton and Johnson companies — the latter acquired the right to make and sell, upon certain conditions, guard rails constructed according to the specifications attached to letters patent granted to William Wharton, Jr., for an improved guard rail.

The present action was brought upon this agreement of license to recover the stipulated royalties or fees for guard rails sold and delivered by the Johnson Company between January 10, 1888, and June 4, 1889.

In its statement of demand the Wharton Company averred that the Johnson Company commenced and continued the sale of guard rails, and voluntarily rendered statements and paid

the stipulated fees down to January 1, 1887, but refused to pay those due between January 1, 1887, and January 10, 1888, on the ground that the rails made and sold by it were not covered by the Wharton patent; that in a suit brought by the present plaintiff against the Johnson Company in the Circuit Court of the United States for the Eastern District of Pennsylvania, it was adjudged that the rails sold by the defendant were covered by the Wharton patent, and judgment was entered for the amount of royalties to January 10, 1888; that from and after the latter date, down to the expiration of the patent, June 4, 1889, the defendant continued to sell, under the agreement, rails of the same character as those that had been adjudged to be covered by the above patent.

The Johnson Company, admitting the manufacture and sale by it between January 10, 1888, and June 4, 1889, of certain girder guard rails of steel, averred that those manufactured by it were not such rails as were covered by the Wharton patent. It also admitted that the suit mentioned in the plaintiff's statement was brought and decided as set forth, but insisted that the decision was not binding in the present case, " because the amount involved in the former suit was so small as not to entitle the defendant to a writ of error on the said judgment to the Supreme Court of the United States, whereas the amount involved in this suit is sufficient to so entitle the defendant;" and " that the right of the defendant to have the issues involved in this case adjudicated by the Supreme Court of the United States, if a decision adverse to it is rendered by this [the Circuit] court, cannot be taken away from it by reason of a former trial and judgment between the same parties, where the amount involved did not entitle the defendant to a review of the same."

The court below held the affidavit of defence to be insufficient, and, the damages sustained by the defendant having been assessed at the sum of $6306, judgment was rendered for that sum.

*Mr. Wayne McVeagh,* (with whom were *Mr. George Hard-*

*ing* and *Mr. George J. Harding* on the brief,) for plaintiff in error.

The court below, without giving reasons, directed the entry of judgment against the defendant for want of a sufficient affidavit of defence, on the ground that the essential question was *res judicata*, by a prior judgment of the same court in a case between the same parties, where the same legal question had been raised, upon a claim for a prior instalment of license fees.

The defendant's claim, as made in its affidavit of defence, that the prior judgment for a sum below the limit of this court's jurisdiction could not lawfully be made effective to prevent this court from passing upon the essential question on its merits in a case within its jurisdiction, was negatived.

That the lower court's position is erroneous, it is submitted, must appear when the intended and actual function of this court as a court of last resort is considered. It was intended that litigants within the limits of the court's jurisdiction might have the merits of their controversies passed upon by this court. There is no room for the theory that the court, with acknowledged jurisdiction of any particular case, was intended to be a mere organ of expression by way of echo of the views of the lower court. And yet this is the practical result of the conclusion arrived at by the court below, that the prior judgment against the defendant for an amount below the limit of this court's jurisdiction was conclusive of the defendant's rights.

The plaintiff in error recognizes the full scope and force of the law of estoppel of a *res judicata.* And it is not contended here that, generally speaking, the judgment or decree of a lower court of record unappealed from, where the right to a review exists, is not conclusive of the rights of the parties in respect to the matters in issue. *Beloit* v. *Morgan*, 7 Wall. 619, 622; *Cromwell* v. *County of Sac*, 94 U. S. 351.

Where, however, under the Federal Statutes, no right to a writ of error or appeal exists in a particular case, it is respectfully submitted that the plain intent of the law constituting

this court a court of review of the merits of cases within its jurisdiction, denies to the conclusion of a lower Federal court the force of an estoppel in a subsequent case within the limits of this court's jurisdiction, where the question is distinctly raised in the court below. The strictness with which this court maintains the limits of its jurisdiction, based upon the amount in controversy, is well illustrated by those cases which hold that nothing collateral to the judgment or decree can be used to establish jurisdiction where the judgment or decree itself is below the statutory limit. *Troy* v. *Evans*, 97 U. S. 1; *Elgin* v. *Marshall*, 106 U. S. 578, 581; *Opelika City* v. *Daniel*, 109 U. S. 108; *New Jersey Zinc Co.* v. *Trotter*, 108 U. S. 564; *Bruce* v. *Manchester & Keene Railroad*, 117 U. S. 514; *New England Mortgage Security Co.* v. *Gay*, 145 U. S. 123.

But the same strictness of interpretation clearly requires, on the other hand, that, jurisdiction being established, it be made effective to bring within the cognizance of the court all questions of fact and law properly raised in the court below, independent of technical rules of estoppel, the operation of which, however general in extent, cannot be made to deprive litigants of substantive rights.

The practical results of such a rule of law as that affirmed by the court below present a very persuasive argument against its soundness. In very many cases it is quite competent for the plaintiff to divide his causes of action and to limit the amount in his first suit below the sum allowing an appeal. Securing a judgment in his favor for the amount he has thus limited, he is then at liberty to abrogate the defendant's right of appeal in all subsequent suits, without reference to the amounts involved.

It may be said that, in pursuing such a course, he incurs the risk of a final judgment against him, as well as in his favor; but it must be remembered that as he alone is to exercise the option, he will only do so when a previous decision of the court below, or some other information leading him to suppose he can forecast its decision, causes him to believe that he is entirely safe in doing so. Meanwhile his unfortunate adversary is left absolutely at his mercy; for, if the court below

is believed to be the more favorable forum for the plaintiff, the amount for which suit is brought will of course be limited so as to prevent an appeal when the controversy is put at issue in the larger litigation ; while, if the plaintiff supposes this court is the more favorable forum for him, he will, equally, of course, sue for an amount which will entitle him to its judgment.

*Mr. Frank P. Prichard,* (with whom was *Mr. John G. Johnson* on the brief,) for defendant in error.

Mr. Justice Harlan, after stating the facts, delivered the opinion of the court.

The question, upon the merits, which the defendant's affidavit of defence presented, was whether the girder guard rails manufactured and sold by it were covered by the Wharton patent and by the license granted by the agreement of November 24, 1885. But that precise question, it is admitted, was presented and determined in the former suit between the same parties. And we are to inquire, on this writ of error, whether the court below erred in holding that the judgment in the former suit concluded that question between the parties. The learned counsel for the defendant insists that it did not, and bases his contention solely upon the ground that the former judgment was not, by reason of the limited amount involved, subject to review by this court.

Is it true that a defeated suitor in a court of general jurisdiction is at liberty, in a subsequent suit between himself and his adversary, in the same, or in any other court, to relitigate a matter directly put in issue and actually determined in the first suit, upon its appearing that the judgment in the first suit, by reason of the small amount in dispute, could not be reviewed by a court of appellate jurisdiction ? Does the principle of *res judicata,* in its application to the judgments of courts of general jurisdiction, depend, in any degree, upon the inquiry whether the law subjects such judgments to reëxamination by some other court? Upon principle and authority

these questions must be answered in the negative. We have not been referred to, nor are we aware of, any adjudged case that would justify a different conclusion.

The object in establishing judicial tribunals is that controversies between parties, which may be the subject of litigation, shall be finally determined. The peace and order of society demand that matters distinctly put in issue and determined by a court of competent jurisdiction as to parties and subject-matter, shall not be retried between the same parties in any subsequent suit in any court. The exceptions to this rule that are recognized in cases of judgments obtained by fraud or collusion have no application to the present suit.

In *Hopkins* v. *Lee*, 6 Wheat. 109, 113, it was held that a fact directly presented and determined by a court of competent jurisdiction cannot be contested again between the same parties in the same or any other court. "In this," the court said, "there is and ought to be no difference between a verdict and judgment in a court of common law and a decree of a court of equity. They both stand on the same footing and may be offered in evidence under the same limitations, and it would be difficult to assign a reason why it should be otherwise. The rule has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it an end could never be put to litigation. It is, therefore, not confined in England or in this country to judgments of the same court or to the decisions of courts of concurrent jurisdiction, but extends to matters litigated before competent tribunals in foreign countries. . . . On a reference to the proceedings at law, and in chancery, in the case now before us, the court is satisfied that the question which arose on the trial of the action of covenant was precisely the same, if not exclusively so, (although that was not necessary,) as the one which had already been directly decided by the court of chancery." And in *Smith* v. *Kernochen*, 7 How. 198, 217: "The case, therefore, falls within the general rule, that a judgment of a court of concurrent jurisdiction directly upon the point is as a plea, a bar, or as evidence conclusive between the same parties or privies upon the same matters when

directly in question in another court." To the same effect are *Pennington* v. *Gibson*, 16 How. 65, 77; *Stockton* v. *Ford*, 18 How. 418; and *Lessee of Parrish* v. *Ferris*, 2 Black, 606, 609.

The whole subject was carefully considered in *Cromwell* v. *County of Sac*, 94 U. S. 351, 352, where it is said: "There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defences never existed."

The doctrines of the latter case were applied in *Lumber Co.* v. *Buchtel*, 101 U. S. 638, 639, which case is like this in some respects. That was an action for the recovery of the last instalments of money due on a contract for the purchase of timber-lands; the plaintiff having in a previous action against the same defendant obtained a judgment for the first instalment. In the first action the sole defence was that the defendant had been induced to make the contract of guaranty by false and fraudulent representations. The same defence was made in the second action, and an additional one was interposed to the effect that the representations made as to the quantity of timber, and which induced the execution of

the contract, amounted to a warranty upon which defendant could sue for damages.   Both grounds of defence, relied on in the second action, were held to be concluded by the judgment in the prior action.   In respect to the second ground, it was said : " The finding of the referee, upon which the judgment [in the first action] was rendered — and this finding, like the verdict of a jury, constitutes an essential part of the record of a case — shows that no representations as to the quantity of timber on the land sold were made to the defendant by the plaintiff, or in his hearing, to induce the execution of the contract of guaranty.   This finding, having gone into the judgment, is conclusive as to the facts found in all subsequent controversies between the parties on the contract.   Every defence requiring the negation of this fact is met and overthrown by that adjudication."

In *Stout* v. *Lye*, 103 U. S. 66, 71, in which one of the questions was as to the conclusiveness of a judgment in a state court upon the same parties to a suit in the Federal court — the two suits involving the same subject-matter, and the suit in the state court having been first commenced — this court, observing that the parties instituting the suit in the Federal court, being represented in the state suit, could not deprive the latter court of the jurisdiction it had acquired, said : " The two suits related to the same subject-matter, and were in fact pending at the same time in two courts of concurrent jurisdiction.   The parties also were, in legal effect, the same, because in the state court the mortgagor represented all who, pending the suit, acquired any interest through him in the property about which the controversy arose.   By electing to bring a separate suit the Stouts voluntarily took the risk of getting a decision in the Circuit Court before the state court settled the rights of the parties by a judgment in the suit which was pending there.   Failing in this, they must submit to the same judgment that has already been rendered against their representative in the state court.   That was a judgment on the merits of the identical matter now in question, and it concluded the ' parties and those in privity with them, not only as to every matter which was offered and

received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' *Cromwell* v. *County of Sac*, 94 U. S. 351, 352. It is true the mortgagor did not set up as a defence that the bank had no right to take the mortgage, or that he was entitled to certain credits because of payments of usurious interest, but he was at liberty to do so. Not having done so, he is now concluded as to all such defences, and so are his privies."

In all of these cases, it will be observed, the question considered was as to the effect to be given by the court of original jurisdiction to the judgment in a previous case between the same parties or their representatives, and involving the same matters brought up in a subsequent suit. In no one of them is there a suggestion that the determination of that question by the court to which it was presented should be controlled by the inquiry whether the judgment in the first action could be reviewed upon appeal or writ of error.

The counsel for the plaintiff in error, in support of his position, referred to the clause of the Constitution declaring that the judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish, and to the clause providing that the judicial power of the United States shall extend to *all* cases in law or equity mentioned in that instrument. But, except in the cases specially enumerated in the Constitution and of which this court may take cognizance, without an enabling act of Congress, the distribution of the judicial power of the United States among the courts of the United States is a matter entirely within the control of the legislative branch of the government. And it has never been supposed that Congress, when making this distribution, intended to change or modify the general rule, having its foundation in a wise public policy, and deeply imbedded in the jurisprudence of all civilized countries, that the final judgment of a court — at least, one of superior jurisdiction — competent under the law of its creation to deal with the parties and the subject-matter, and having acquired jurisdiction of the par-

ties, concludes those parties and their privies, in respect to every matter put in issue by the pleadings and determined by such court. This rule, so essential to an orderly and effective administration of justice, would lose much of its value if it were held to be inapplicable to those judgments in the Circuit Courts of the United States which, by reason of the limited amount involved, could not be reviewed by this court.

The inquiry as to the conclusiveness of a judgment in a prior suit between the same parties can only be whether the court rendering such judgment — whatever the nature of the question decided, or the value of the matter in dispute — had jurisdiction of the parties and the subject-matter, and whether the question, sought to be raised in the subsequent suit, was covered by the pleadings and actually determined in the former suit. The existence or non-existence of a right, in either party, to have the judgment in the prior suit reëxamined, upon appeal or writ of error, cannot, in any case, control this inquiry. Nor can the possibility that a party may legitimately or properly divide his causes of action, so as to have the matter in dispute between him and his adversary adjudged in a suit that cannot, after judgment, and by reason of the limited amount involved, be carried to a higher court, affect the application of the general rule. Whatever mischiefs or injustice may result from such a condition of things, must be remedied by legislation regulating the jurisdiction of the courts, and prescribing the rules of evidence applicable to judgments. Looking at the reasons upon which the rule rests, its operation cannot be restricted to those cases, which, after final judgment or decree, may be taken by appeal or writ of error to a court of appellate jurisdiction.

We are of opinion that the question whether the rails manufactured by the Johnson Company were covered by the Wharton patent, having been made and determined in the prior action between the same parties — which judgment remains in full force — could not be relitigated in this subsequent action.

There is no error in the judgment, and it is

*Affirmed.*