**In re Fredrick LUCAS, Alvis N. Lucas, Debtors.**

**Fredrick LUCAS and Alvis N. Lucas, Plaintiffs,**

v.

**Michael FAYETTE, Defendant.**

**Bankruptcy No. HK 81–01760. Adv. No. 81–0873.**

United States Bankruptcy Court, W. D. Michigan.

July 9, 1982.

American Bankruptcy Center, P. C., of Grand Rapids, and Edward Read Barton, Allegan, Mich., for plaintiffs.

Pinsky, Smith & Soet, David E. Hulswit, Jr., Grand Rapids, Mich., for defendant.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

### JUDICIAL LIEN—LIEN AVOIDANCE—APPEAL BOND

In this Chapter 13 case, plaintiffs' complaint asks for the following relief:

1. That defendant's claim be declared to be unsecured.

2. That whatever purported security defendant may have be determined to be in the nature of a judicial lien and be voided under 11 U.S.C. § 522(f)(1).

3. That an order be entered, recordable in form, which will clear plaintiffs' title to their real estate of any lien and clouds which defendant may have recorded.

The sole issue raised by the pleadings is whether the lien of defendant in plaintiffs' real estate is a judicial lien.

The facts pertinent to this issue are clear. On October 22, 1978, a jury verdict was rendered in favor of the defendant and against plaintiff Fredrick Lucas (Lucas) for damages in the sum of $4,000. The District Court for Kent County, Michigan, denied Lucas' motion for a new trial and an appeal was taken to the State Circuit Court. Plaintiffs executed an appeal bond in the usual form in the sum of $5,077.59. The bond provided *inter alia* that in the event a judgment on appeal was rendered against the defendant (Lucas), plaintiffs agreed to pay the amount of the judgment including costs and interest. The bond then provided that plaintiffs "hereby pledge their security on the aforementioned appeal bond the real estate which they own as a land contract equitable interest * * ". The described property is located in Dorr Township, Allegan County, Michigan. The bond continued:

"They further state under oath, that the above described property has a fair market value in excess of their liabilities said liabilities being approximately $7,000.00 (Land Contract) in an amount more than double the amount expressed in the aforementioned bond, said amount being at least $49,000.00, and that this bond may serve as a second mortgage upon said property as security for the performance as aforementioned, provided, that if a judgment on appeal, is rendered against him, Defendant shall be allowed to petition the Court for permission to make installment payments toward said judgment pursuant to the applicable Court rule."

This bond was signed and sworn to by both of the plaintiffs. It was approved by the District Judge, but an objection to the sufficiency of the security was filed. A supplemental bond was then furnished wherein plaintiffs "pledge as additional security * * real estate which they own in fee simple with no encumbrances * * " This real estate is located in Leighton Township, Allegan County, Michigan. The bond continued:

"The undersigned further attest that the above described property has a fair market value in an amount more than double the amount expressed in the above-mentioned bond and that if a Judgment on appeal is rendered against Defendant, Fredrick Lucas, he shall be allowed to petition the Court to make installment payments towards said Judgment pursuant to the applicable court rule.

"The undersigned further state that they have purchased the real estate described in the bond dated December 26, 1979, from Elizabeth Meyer Slager, 1235 Peony, Moline, Michigan, and that it is a current indebtedness on said property in the amount of approximately $7,412.07 pursuant to a mortgage to Mrs. Slager, and there are no other encumbrances on said property."

This bond was also signed and sworn to by both plaintiffs. They also executed an affidavit which stated in part:

"3. That the affiants own assets having a fair market value in excess of their liabilities and those assets, which have been pledged as security for the aforementioned appeal bond, are exempt from

execution by an amount which is not less then double the amount of said bond.

"4. Affiants affirmatively state that the real estate described in the Appeal Bond and the Supplementary Bond is more than sufficient security for said Appeal and is sufficient to serve the requirements of said Bond on Appeal pursuant to the applicable Court rules.

"5. That affiants are informed and believe the truth to be that it is virtually impossible to obtain a surety on an appeal bond of this type without paying a sum equal to or greater than the amount owed and, therefore, affiants believe that the only reasonable alternative is to allow the pledging of the unencumbered real estate as heretofore described."

This document was signed and sworn to by plaintiffs on January 5, 1980.

The Circuit Judge granted a remittitur in the amount of $1,000 but denied the appeal in all other respects. Lucas applied to the Michigan Court of Appeals for leave to appeal; said application was denied February 9, 1981. Notice of *lis pendens* was filed in the Office of the Register of Deeds, Allegan County, on February 27, 1981.

On April 24, 1981, plaintiffs filed a petition for relief under Chapter 13 of Title 11 of the United States Code.

Under the terms of their plan, plaintiffs are to pay secured claims in full. Unsecured claims are to be paid 25% in full settlement. Defendant is scheduled as an unsecured creditor with a claim of $3,500 evidenced by the judgment in the State District Court. The Dorr Township property is shown as being plaintiffs' farm and residence with a present value of $80,200 (based on twice the 1981 assessed value at $40,100) and subject to a lien in favor of Federal Land Bank of Saint Paul in the sum of $74,000, leaving an equity of $6,200. This equity is claimed to be exempt under 11 U.S.C. § 522(d)(1). The Leighton Township property is not listed by plaintiffs as an asset. The plan has not yet been confirmed and the confirmation hearing is now adjourned without date pending the outcome of this adversary proceeding.

If the lien created by the appeal bond is a judicial lien, plaintiffs are entitled to the relief prayed for to the extent that the property is exempt. [11 U.S.C. § 522(f)(1)]

11 U.S.C. § 101(28) defines a "lien":

" 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation;"

The House Report on the Bankruptcy Reform Act, H.R.Rep.No.95–595, 95th Cong. 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6269 in discussing this subsection, states in part:

"In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens."

In *In re Galbraith*, 15 B.R. 549 (Bkrtcy.E.D.Pa.1981), Judge Goldhaber states:

"The legislative history of the Code makes it crystal clear that the above definitions are mutually exclusive, that is, a given lien may not fall within more than one of the above three categories."

■ There is no claim that the lien is a common law lien. Therefore, it must be either a judicial lien, security interest or a statutory lien. A statutory lien is defined in 11 U.S.C. § 101(38):

" 'statutory lien' means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute;"

The lien before us did not arise solely by force of a statute so I would find that it cannot be a statutory lien.

A judicial lien and a security interest are defined in 11 U.S.C. § 101:

"(27) 'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;

" * * *

"(37) 'security interest' means lien created by an agreement;"

■ Plaintiffs cite several cases to support their claim that defendant has a judicial lien. None of these cases are helpful. Most of them involve judgment liens in Pennsylvania. *In re Galbraith, Supra; In re Clark*, 11 B.R. 828 (Bkrtcy.W.D.Pa.1981); *In re Waite*, 11 B.R. 608 (Bkrtcy.M.D.Pa. 1981); *In re Hirsh*, 8 B.R. 234 (Bkrtcy.E.D. Pa.1981). There is no question that these cases involved judicial liens. Plaintiffs also cite *In re Gantt*, 7 B.R. 13 (Bkrtcy.N.D.Ga. 1980). However that case merely held that a pending dischargeability proceeding did not stay a 522(f) proceeding.

I would find that this lien was a security interest created by agreement, rather than a judicial lien. While the appeal bond was approved by Judge Smolenski pursuant to the court rules, it was not obtained by defendant through a judicial proceeding. It was not a prerequisite to an appeal. *Wright v. Fields*, 412 Mich. 227, 313 N.W.2d 902 (1981). Instead it was given by plaintiffs for their own benefit in exchange for a stay holding in abeyance any efforts to collect on the judgment. The lien given to secure the bond was likewise voluntarily offered in order to obtain the above relief. This lien was not in any way obtained by an act of the defendant; plaintiff agreed to its creation, its terms, and the property involved. Absent such an agreement, the court would not have granted the lien. Because this agreement was the essential element in the creation of the lien, I would hold that it falls within the definition in 11 U.S.C. § 101(37).

To hold otherwise would make it difficult for many appellants to obtain a stay, as a judge could not approve of a bond of this type where the property is exempt. Normally a bond on appeal is provided by a third party surety, to whom the debtor provides security should the surety later become liable. In such a case, neither the bond nor the lien securing it would be voidable. Plaintiffs here have chosen an alternate procedure for the reason stated in their affidavit:

"[I]t is virtually impossible to obtain a surety on an appeal bond of this type without paying a sum equal to or greater than the amount owed, and, therefore, affiants believe that the only reasonable alternative is to allow the pledging of the unencumbered real estate as heretofore described."

The court was only able to approve of such a bond because it concluded that it would provide a commensurate amount of security to the appellee as a surety bond. No such conclusion could be reached if plaintiffs could now set the bond aside by filing a petition under Title 11 of the United States Code.

Therefore, this being a security interest and not a judicial lien, plaintiffs' complaint must be dismissed.

Plaintiffs have raised many matters in their brief which are not before the court. However, since they are without merit, and to prevent a waste of judicial time caused by later amendments and requests for rehearing, I will dispose of them at this time.

1. Plaintiffs claim that interest on the judgment should be 6% rather than 12%. In his original order, the State District Judge provided for interest at 6%. This order was entered October 22, 1979. The Circuit Judge on May 27, 1980, ordered a remittitur of $1,000 and ordered the District Judge to enter a judgment of $3,000. Both parties applied for a rehearing and on August 5, 1980, both motions were denied and then the court stated:

"IT IS FURTHER ORDERED that the Judgment previously entered by this Court on May 27, 1980 should reflect that the damages awarded by the District Court in the amount of $4,000 should be reduced to $3,000 and that costs are to be taxed on this amount and interest to be granted at six (6%) percent from the date of filing the complaint therein through June 1, 1980 and thereafter at the rate of twelve (12%) percent compounded annually until the Judgment is satisfied."

On September 22, 1980, the District Court entered a judgment pursuant to the Circuit Judge's order for $3,000 damages, interest to September 1, 1980, equal to $431.75, and costs of $101.60, totaling $3,533.35, with interest on the judgment of 12% per annum, compounded annually. Application for appeal was taken on this judgment and was denied for lack of merit in the grounds presented. There was no claim in the application for leave to appeal that the lower courts had erred in the interest allowed.

■ The doctrine of res judicata precludes this court from reviewing orders of State Courts where the same parties and issues are involved.

"Literally, res judicata means a matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment. As stated in many cases, the doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction."
" * * * *

"The doctrine of res judicata is a judicially created doctrine, which may be said to exist as an obvious rule of reason, justice, fairness, expediency, practical necessity, and public tranquillity. Public policy, judicial orderliness, economy of judicial time, and the interest of litigants, as well as the peace and order of society, all require that stability should be accorded judgments, that controversies once decided on their merits shall remain in repose, that inconsistent judicial decisions shall not be made on the same set of facts, and that there be an end to litigation which, without the doctrine of res judicata, would be endless.

"The doctrine of res judicata is but a manifestation of the recognition that endless litigation leads to confusion or chaos. The doctrine reflects the refusal of the law to tolerate a multiplicity of, or needless, litigation and is based on the worthy premise that the interest of the proper administration of justice is best served by limiting parties to one fair trial of an issue or cause. It rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.

"The doctrine of res judicata not only puts an end to strife, but recognizes that certainty in legal relations must be maintained. It produces certainty as to individual rights and gives dignity and respect to judicial proceedings. It is considered that a judgment presents evidence of the facts of so high a nature that nothing which could be proved by evidence aliunde would be sufficient to overcome it, and therefore it would be useless for a party against whom it can be properly applied to adduce any such evidence, and accordingly he is precluded by law from doing so." 46 Am.Jur.2d Judgments § 394 (1969).

See also *Johnson Steel Street Rail Co. v. William Wharton, Jr., & Co.*, 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429 (1894) where the Court held that the doctrine of res judicata would apply even though the amount in the former suit was so small as to prevent the defeated party from securing a review by an appellate court. The Court stated at p. 257, 14 S.Ct. at 609:

"The object in establishing judicial tribunals is that controversies between parties, which may be the subject of litigation, shall be finally determined. The peace and order of society demand that matters distinctly put in issue and determined by a court of competent jurisdiction, as to parties and subject matter, shall not be retried between the same parties, in any subsequent suit in any court. The exceptions to this rule that are recognized in cases of judgments obtained by fraud or collusion have no application to the present suit."

It is true, as pointed out by plaintiffs that this court has refused to be bound by state court judgments in dischargeability cases, however, dischargeability of debts is an entirely different matter. This Court is bound by the determination of state courts as to findings of liability, damages and interest charges. It is not bound on findings of fraud as bearing on the dischargeability of a debt in a bankruptcy proceeding because that issue was not before the State Court and the State Court would lack jurisdiction.

2. Plaintiffs claim that the bond was a preferential transfer and thus voidable under 11 U.S.C. § 547. This may be true. It might be that there was no perfection of the lien until the notice of lis pendens was filed. This was within 90 days of the filing of the petition for relief. The debtor is further presumed to be insolvent during that 90 day period. This is certainly a matter to be considered by the Court in determining whether debtors' plan should be confirmed as this property right might be available for distribution in a Chapter 7 case. But, this cannot help the debtors in this case because 11 U.S.C. § 522(h), referred to by plaintiffs, is limited by subsection (g)(1) to involuntary transfers. This Court would find that debtors voluntarily transferred the property and therefore lack any avoiding power as to a preference.

3. Plaintiffs claim their transfer was fraudulent under 11 U.S.C. § 548 and the Uniform Fraudulent Conveyance Act as adopted in Michigan. I can find no basis on which to find that there was an absence of fair consideration in the giving of the appeal bond and lien unless there is no consideration for any lien given for protection of an appellee on appeal. In addition, even if I would find no consideration, this would not help the plaintiffs as their avoiding powers under 11 U.S.C. § 522(h) are again limited by 11 U.S.C. § 522(g)(1) to involuntary transfers. Here, if a fraud was perpetrated, plaintiffs were parties to the fraud. Furthermore, the alleged fraud took place when the bond was signed. At that time debtors were solvent according to their affidavit. Even if under Section 548(d)(1) the transfer took place on February 27, 1981, when the notice of lis pendens was filed, unlike Section 547, there is no presumption of insolvency in Section 548, and there is no proof of insolvency as of that date.

4. It is claimed that the bond (1) was excessive, (2) did not comply with court rules, (3) should have guaranteed a diligent prosecution of the appeal, not payment. I cannot understand how the fact that the bond was excessive can be material. No one is claiming that plaintiffs are liable for the full amount of the bond. Even if the bond is excessive and this is material, this is a matter that should have been taken up with the State Courts at the time the bond was given. There is no evidence of an earlier objection by plaintiffs to the bond; it was voluntarily signed. I also do not understand the claim that the bond did not comply with the court rules. Plaintiffs do not point out which court rule was not complied with. Neither do I understand the claim that the bond should only guarantee a diligent prosecution of the appeal and *not* guarantee payment. Michigan General Ct. Rules 1963, Rule 701.8(a)(2)(C)(i) provides that the bond must contain a condition that:

"the appellant will diligently prosecute his appeal to a decision, and if a judgment is rendered against him, he will pay the amount of the judgment, including costs and interest;"

5. Plaintiffs also contend that there was no consideration for Mrs. Lucas in signing the bond. It is pointed out that Mrs. Lucas is not a judgment debtor of defendant. Of course it is fundamental that "consideration is an essential element of, and is necessary to the enforceability or validity of, a contract." 17 Am.Jur.2d *Contracts* Sec. 86 (1964). However, the consideration need not be a benefit to a promisor.

"Technically, consideration is defined as some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the oth-

er. Again, consideration for a promise is defined as an act or a forbearance; or the creation, modification, or destruction of a legal relation; or a return promise bargained for and given in exchange for the promise. Consideration is, in effect, the price bargained and paid for a promise— that is, something given in exchange for the promise. In some jurisdictions consideration is defined by statute." 17 Am. Jur.2d *Contracts* § 85 (1964).

In this case there was a clear detriment to the defendant. Instead of being allowed to proceed against the judgment debtor at a time when he swore that he was solvent, he was forced to wait until Lucas became insolvent and the best he could get on his judgment was 25%.

Plaintiffs' complaint is dismissed with prejudice. Defendant's claim is allowed as a secured claim. No costs will be allowed.