**Thomas SULLIVAN, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Sabena Belgian World Airlines and George Soliman, Defendants.**

**No. 84 Civ. 6822 (WK).**

United States District Court, S.D. New York.

July 11, 1985.

---

**2.** This is so, unless the parties have contractually agreed to do otherwise.

Gordon & Librie by Robert M. Gordon, New York City, for plaintiff.

Gallagher & Sullivan by Alan D. Kaplan, Mineola, N.Y., for defendant American.

Goldman & Grossman by Jay S. Grossman, New York City, for defendants Sabena & Soliman.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff Thomas Sullivan sues American Airlines ("American"), Sabena Airlines ("Sabena"), and George Soliman ("Soliman") for defamation and tortious interference with his employment contract. The action is before us by virtue of its removal from state court pursuant to 28 U.S.C. § 1441(d) by Sabena, which is majority owned by the Kingdom of Belgium. All defendants now move to amend their answers to assert the affirmative defense of collateral estoppel, and Sabena and Soliman move to assert the affirmative defense of truth. All defendants move for summary judgment on the ground, among others, that plaintiff is precluded from maintaining this suit by virtue of an arbitration decision in a prior proceeding.

Plaintiff is a former building cleaner employed by American, which was under contract with Sabena to perform cleaning work in Sabena's first class lounge at Kennedy Airport. On June 27, 1983 Soliman, who was the operations manager for Sabena, went with another Sabena employee to the lounge where they observed plaintiff in the performance of his duties. They noticed several bottles of Belgian beer wrapped in a plastic bag lying atop a cleaning barrel. These bottles were unopened

and cold to the touch. Soliman looked inside a small refrigerator in the lounge which Sabena stocked with beer and soft drinks for its first class passengers. This cooler normally carried 12 bottles of beer, but Soliman found only two or three. He asked plaintiff about the beer atop the cleaning barrel. Soliman remembers that plaintiff responded, "I took it for the boys." Plaintiff recalls stating that he "was bringing it to my boss."

Soliman informed plaintiff that he wished to speak with plaintiff's supervisor. The supervisor reported to Soliman's office about 15 minutes later and Soliman told him what had transpired. Soliman then took the supervisor to the first class lounge and attempted to show him the beer in the barrel. It was no longer there. However, when Soliman checked the lounge refrigerator he discovered that it had its full complement of beer.

Upon further investigation of these events, American discharged plaintiff for violation of company rules. Through his Union, Local 501, Transport Workers Union of America (AFL–CIO) (the "Union"), plaintiff pursued informal grievance procedures provided for by the Collective Bargaining Agreement (the "Agreement") signed by the Union and American. When these efforts to reinstate plaintiff failed, the grievance was submitted for arbitration to the New York Area Board of Adjustment pursuant to the terms of the Agreement. In so doing, plaintiff gave his written authorization for the Union

> as my representative to act for me in the disposition of this grievance.

Paragraph V(k) of Article 32 of the Agreement provides that the decision of a majority of the Board "shall be final and binding upon the parties to such dispute."

An arbitration followed on two separate days before a panel of three arbitrators: one for the Union, one for the employer, and a "neutral referee" appointed under the provisions of the Agreement. The question before the arbitrators was whether plaintiff had been discharged for just cause, American contending that plaintiff

was guilty of attempted theft of beer and plaintiff maintaining his innocence. Plaintiff was given his choice of counsel and he selected the attorney who continues to represent him here. Also present were representatives for the Union and American. Plaintiff testified in his own behalf along with five other witnesses. Each side had the opportunity to conduct direct and cross-examination and each side submitted post-hearing briefs. The transcript of the hearing spans 381 pages.

Before the arbitrators had rendered a decision, the present lawsuit was filed in state court. About a month after defendants had interposed answers in the state action, the arbitrators handed down a decision in favor of American. By a six-page opinion written by the "neutral referee," in which American's representative concurred and from which the Union's representative dissented, the Board first concluded that plaintiff had been accorded the rights of hearing, representation and consideration granted by the Agreement. The "neutral referee" then wrote

> On continued study of the evidence, the unavoidable conclusion is that Sullivan had intended to pilfer the beer. Whatever uncertainty could be derived from the use of the words "boys" and "boss", must be resolved by the uncontravened testimony of Ferrara [plaintiff's supervisor] that Sullivan had told him he had taken the beer for the boys. The beer was not refuse or found items which had to be taken to a supervisor. Their condition was such as to indicate that they were taken from the refrigerator. They were cold and the glass was covered with condensation. Furthermore, Sullivan's many explanations varied so as to give reason to question his credibility. Finally, Sullivan's own actions indicated that he had in fact intended to take the beer to the boys instead of the supervisor. His apology to Soliman and his later discussion with Mazzone [plaintiff's other supervisor] show that he was aware of the misconduct that he had committed.

By affirmation, counsel for plaintiff states that about two months after the arbitrators had rendered their award, he wrote to the president of plaintiff's Union and requested that he move to set aside the decision of the arbitrators. He states that, not having received a response to this request he called the offices of the Union and was told that it was the Union's policy not to move to vacate awards. By reply affidavit, counsel for American states that a search by the Union of the president's files located no correspondence from counsel for plaintiff. No appeal from the arbitrators' award was taken.

## DISCUSSION

### Amendment to Pleadings

Defendants' motions to amend their answers to assert the affirmative defense of collateral estoppel are granted. When defendants filed their answers, the arbitrators had not yet rendered their decision. It was therefore impossible for defendants to have asserted that the award precluded further litigation. Amendments to pleadings are to be granted liberally under F.R.C.P. 15(a), *see Middle Atlantic Utilities Co. v. SMW Development Corp.* (2d Cir.1968) 392 F.2d 380, 384, and plaintiff, who was certainly aware of the imminence of an arbitrators award, cannot assert he was unduly surprised by the proposed amendment. We see less excuse for Sabena's failure to plead the affirmative defense of truth. However, its assertion of the hornbook law defense to charges of defamation should likewise come as no surprise to plaintiff. We therefore grant the motion.

### Collateral Estoppel

Collateral estoppel is a judicially created doctrine intended to increase judicial efficiency, reduce inconsistent rulings, and promote the finality of judgments, *Schwartz v. Public Administrator* (1969) 24 N.Y.2d 65, 74; 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 732, which may, in appropriate circumstances, apply to an arbitration award. *See American Renaissance*

*Lines, Inc. v. Saxis S.S. Co.* (2d Cir.1974) 502 F.2d 674, 678. There are two requirements for application of collateral estoppel in New York. First, there must have been an "identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and second, there must have been a full and fair opportunity to litigate." *Schwartz*, 24 N.Y.2d at 71, 298 N.Y.S.2d 955, 246 N.E.2d 725; *Murphy v. Gallagher* (2d Cir.1985) 761 F.2d 878, 881.

Plaintiff's action for defamation flows from Soliman's comments to plaintiff and from American's termination investigation and letter to plaintiff which accused him of "[d]ishonesty ... in relations with the company, such as theft and pilferage of company property...." Complaint, ¶ 10. The merits of this claim turn on whether the statements accusing plaintiff of attempted pilferage were true. That is the precise question which was presented to and decided by the arbitrators, two of whom concluded that

> On continued study of the evidence, the unavoidable conclusion is that Sullivan had intended to pilfer the beer.

In light of the arbitrators' resolution of this question, we conclude that the identity of issues requirement has been met.

Consideration of whether or not a party has had a full and fair opportunity to litigate involves exploration of "such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." *Schwartz*, 24 N.Y.2d at 72, 298 N.Y.S.2d 955, 246 N.E.2d 725. The burden of showing that there was not a full and fair opportunity to litigate rests on the party opposing preclusion, here, the plaintiff. *Id.* at 73, 298 N.Y.S.2d 955, 246 N.E.2d 725.

The fact that technically the party to the prior proceeding was plaintiff's

Union does not preclude application of the doctrine to him. A judgment rendered on behalf of a union binds the members on whose behalf it sued when they later sue in their individual capacities, *Acree v. Air Line Pilots Association* (5th Cir.) 390 F.2d 199, *cert. denied* (1968) 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122, and plaintiff, who authorized the Union to pursue the grievance, is no less bound here.

We do not otherwise see that plaintiff was denied a full and fair opportunity to litigate the issues. The Union allowed plaintiff his choice of attorney, and he chose counsel who here represents him. The arbitration consumed two days and over 350 pages of hearing transcript. It involved the testimony of plaintiff and five other witnesses, all of whom were examined and cross-examined. The arbitrators had the benefit of post-hearing briefs. Plaintiff has not alleged the existence of new evidence which was not considered by the arbitrators and he had every incentive to litigate the arbitration, where his job was at stake, as vigorously as he might pursue this defamation action, where he seeks to vindicate his name.

Plaintiff alleges that he requested his Union to appeal the decision of the arbitrators. American disputes that any such request was made. Drawing the inferences in favor of the party opposing the motion for summary judgment, *see United States v. Diebold, Inc.* (1962) 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176, we assume that a request was made which the Union denied. Under these assumptions, plaintiff asserts that his inability to appeal the arbitration award denied him a full and fair opportunity to litigate.

■ There is no hard and fast rule requiring the right to appeal prior to application of the preclusion doctrines. *See Winters v. Lavine* (2d Cir.1978) 574 F.2d 46, 62 ("the extent of preclusion produced by a

prior judicial determination of material and essential issues is not affected by the fact that the losing party could not appeal that determination to a higher court"); *Johnson v. Wharton* (1894) 152 U.S. 252, 256–57, 260–61, 14 S.Ct. 608, 609–10, 610–11, 38 L.Ed. 429; *Napper v. Anderson, Henley, Shields, Bradford & Pritchard* (5th Cir. 1974) 500 F.2d 634, 636–37, *cert. denied* (1975) 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56. Furthermore, the arbitration decision was by the terms of the collective bargaining agreement "final and binding." Bearing in mind that "final adjustment by a method agreed upon by the parties is ... the desirable method for settlement of grievance disputes," *Hines v. Anchor Motor Freight, Inc.* (1976) 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231, we must accord this provision some deference.

■ Counsel for plaintiff states in his affirmation that he asked plaintiff's Union to vacate the arbitrator's decision, and we presume he envisioned action pursuant to New York C.P.L.R. § 7511.[1] Any review pursuant to these provisions, however, would not have gone to the merits of the award, and could not have resulted in vacatur for the arbitrators' mistake of law or fact. *Raisler Corp. v. New York City Housing Authority* (1973) 32 N.Y.2d 274, 285, 344 N.Y.S.2d 917, 298 N.E.2d 91. In this situation, we fail to see how plaintiff's ability to take an Article 75 appeal would have been anything but a fruitless exercise as the reviewing court could not have addressed what plaintiff contends was the major defect in the decision: that the award was incorrect in fact.

■ Given these considerations, we do not find plaintiff's inability to appeal fatal to application of collateral estoppel if he otherwise had a full and fair opportunity at the arbitration to present his case and contest that of American. We believe he did and thus find the full and fair opportunity

---

**1.** The relevant grounds there set forth for vacating an arbitration award are: prejudice by corruption, fraud or misconduct in procuring the award, § 7511(b)(1)(i), partiality of an arbitrator, § 7511(b)(1)(ii), that an arbitrator exceeded his power or so imperfectly executed it that a final and definite award was not made, § 7511(b)(1)(iii), or that the arbitration failed to follow the procedures set forth in the C.P.L.R. § 7511(b)(1)(iv).

requirement of the preclusion doctrine to have been met.

■ Plaintiff's second cause of action is for tortious interference with his employment contract. This tort is made out where a third party has unjustifiably interfered with a contractual relationship, *Moreno v. Marbil Products, Inc.* (2d Cir.1961) 296 F.2d 543, 544, and where such interference was motivated solely by malice and not merely incidental to some other lawful purpose. *Sadowy v. Sony Corp. of America* (S.D.N.Y.1980) 496 F.Supp. 1071, 1080.

■ The claim against American must fall as American was a party to the contract of employment. As to Sabena and Soliman, it cannot reasonably be disputed that their actions leading to plaintiff's discharge were undertaken pursuant to the lawful purpose of pointing out what they believed were derelictions of duty. These circumstances vitiate the exclusive malice requirement of the tort. *Sadowy, supra; see Leibowitz v. Szoverffy* (3d Dep't 1981) 80 A.D.2d 692, 436 N.Y.S.2d 451 (exercise of defendant's right to express his honest although critical opinion of plaintiff's performance of duties precludes finding that he was motivated solely by malice and justifies commission of what might otherwise be actionable wrong). The fact that the arbitrators found Soliman's accusations to have been true further undercuts plaintiff's complaint against him.

In light of the above, the motions for summary judgment are granted. The complaint's second cause of action for tortious interference with contract is dismissed.

SO ORDERED.