## In re Paul HRYNIEWICZ, Debtor.

### Bankruptcy No. 97–25492.

United States Bankruptcy Court,
D. Connecticut.

June 18, 1998.

James Colin Mulholland, Glastonbury, CT, for Debtor.

Bruce Beck, Beck & Eldergill, P.C., Manchester, CT, for Creditor.

Tracy Alan Saxe, Saxe Eustace & Vita, P.C., New Haven, CT, Chapter 7 Trustee.

## MEMORANDUM OF DECISION ON MOTIONS FOR RELIEF FROM STAY AND TO AVOID JUDICIAL LIEN

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I. ISSUES

William H. Wilson ("Wilson"), a creditor in the Chapter 7 case of Paul Hryniewicz (the "debtor"), filed a motion to modify the automatic stay imposed by Bankruptcy Code § 362(a) so that Wilson may enforce his asserted security interest in property of the debtor's estate—18,610 shares of common stock (the "stock" or "stock certificates") in West Service Corporation ("West").[1] The debtor, contending that he is entitled to an exemption in the stock and that Wilson holds a judicial lien and not a security interest in the stock, filed a motion to avoid the judicial lien pursuant to Code § 522(f). The debtor asserts that the judicial lien impairs the debtor's claimed exemption in the stock. The court conducted a consolidated hearing on the motions and the debtor and Wilson thereafter submitted briefs. After considering how the stock came into Wilson's attorney's possession (the "transfer"), the court determines that Wilson holds a security interest, not a judicial lien, in the stock, and grants Wilson's motion and denies the debtor's motion.

### II. BACKGROUND

Wilson, on April 27, 1993, obtained a state-court judgment against the debtor and West, jointly, for $650,000. After the judgment was upheld on appeal,[2] Neil F. Murphy, Jr. ("Murphy"), Wilson's attorney, on November 17, 1995, obtained from the state court an execution authorizing a sheriff to seize any nonexempt, personal property of the debtor and West ("the execution"). When, on November 20, 1995, a sheriff served the execution on the debtor, the debtor not only refused to turn over any such property to the sheriff, but, according to the sheriff's affidavit, uttered a crude remark about the state-court judge.

Murphy then brought a state-court proceeding to examine the debtor as a judgment debtor.[3] The state court set the hearing on

---

**1.** West Service Corporation is presently a Chapter II debtor in this court. West owns and operates a small water system in Suffield, Connecticut and is a regulated public water utility company.

**2.** See Wilson v. Hryniewicz, 38 Conn.App. 715, 663 A.2d 1073 (1995), cert. denied, 235 Conn. 918, 665 A.2d 610 (1995).

**3.** Section § 52–397 of the Connecticut General Statutes provides in relevant part:
Any judgment debtor, an execution against whom has been returned unsatisfied ...may be examined on oath, in the court location where the judgment was rendered, concerning his property and means of paying such judgment, before any judge of the superior court....The judgment creditor or his attorney may provide for the service of a subpoena or subpoena

such proceeding for January 22, 1996. Murphy caused a subpoena duces tecum to be served on the debtor, commanding the debtor to appear at the hearing and to produce numerous documents, including stock certificates. The debtor, together with his attorney, Richard F. Wareing ("Wareing") appeared on the hearing date at state court. The debtor brought with him the stock certificates for West and for a corporation known as Mountain Laurel Realty, Inc. ("Mountain Laurel").

Prior to the commencement of testimony at the hearing, Murphy advised Wareing that the state court had previously issued an execution, which he showed to Wareing, and asked Wareing to turn over to him the West and Mountain Laurel stock. The debtor had earlier given these certificates to Wareing. Murphy noted that alternatively he could ask the state-court judge to issue a turnover order. Wareing examined the execution and then consulted by telephone with a member of his law firm. Wareing then turned over all the stock certificates to Murphy.

A few moments later, Murphy returned the West certificates to Wareing, stating that the stock could not be sold without approval from the Connecticut Department of Public Utility Control and that Wareing should retain the certificates in Wareing's safe. Wilson then advised Murphy that he did not want Wareing to hold the certificates. Murphy so stated to Wareing, who, after conferring with the debtor, returned the certificates to Murphy.

At some point thereafter, Murphy obtained a state-court order for a public sale of the Mountain Laurel stock. In September 1996, Wilson, the only bidder at the public sale, purchased the stock for $200,000. Wilson, on November 7, 1996, obtained a state-court order directing the debtor and Mountain Laurel's corporate secretary to sign the debtor's shares over to Wilson. The debtor has appealed such order, and the appeal remains pending.

duces tecum on the judgment debtor for appearance at such time and place. . . .
Conn. Gen. Stat. Ann. § 52–397 (West 1990 & Supp.1998).

The debtor filed a Chapter 7 petition on December 24, 1997, and Tracy Alan Saxe ("Saxe") became the estate trustee. Wilson, on March 12, 1998, filed a proof of claim, stating that the debtor owes him a total of $937,186 based on the judgment, statutory interest, and attorney's fees. No objection has been filed to the proof of claim, and Saxe has taken no position on either motion before the court.

The debtor's schedules listed the 18,610 shares of common stock in West as having a value of $1.00, and no party disputes such valuation. The debtor claims an exemption in the stock pursuant to 11 U.S.C. § 522(d)(5).[4] The West stock certificates have at all relevant times remained in Murphy's possession.

## III. CONTENTIONS OF THE PARTIES

Wilson argues that he holds a perfected security interest, not a judicial lien, in the debtor's shares of West stock. He emphasizes that the execution was returned unsatisfied, that no sheriff was present at the examination of judgment debtor, that Wareing gave the stock to Murphy, and "[t]here was no purpose in . . . Murphy's holding the stock other than Wilson being a judgment creditor of the Debtor." *Mem. Supp. Mot. Relief From Stay* at 7, 8.

The debtor asserts that the transfer did not create a security interest and that if Wilson holds any type of lien, he holds a judicial lien. According to the debtor, Murphy requested possession of the shares based on the execution, Wareing surrendered them in compliance with the execution, and the stock certificates were therefore involuntarily transferred "under compulsion of law." *Mem. Opp. Creditor's Mot. Relief From Stay* at 14. The debtor further contends that if the transfer did not create a judicial lien, then no lien of any kind was created.

4. Bankruptcy Code § 522(d)(5) exempts "[t]he debtor's aggregate interest in any property, not to exceed in value $800 plus up to $7,500 of any unused amount of the exemption provided under paragraph (1) of this subsection." 11 U.S.C. § 522(d)(5).

## IV. DISCUSSION

### A.

■ The Bankruptcy Code recognizes three types of liens: security interests, judicial liens, and statutory liens. These categories are mutually exclusive and exhaustive, except for certain common law liens. *See Midlantic National Bank v. DeSeno*, 17 F.3d 642, 645 (3d Cir.1994) (*citing* S.REP. No. 95–989, 95th Cong.2d Sess. 25 (1978)); H.R.REP. No. 95–595, 95th Cong. 1st Sess. 312 (1977). Only security interests and judicial liens are relevant in the instant case. The Code defines a security interest as a "lien created by an agreement," 11 U.S.C. § 101(51), and a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).

■ State law, in particular Uniform Commercial Code ("UCC") Articles 8 and 9,[5] codified at Connecticut General Statutes §§ 42a–8–101 *et seq.* and 42a–9–101 *et seq.*, governs the creation, perfection, and attachment of security interests in securities.[6] Section 42a–9–203 provides:

(1) Subject to the provisions of . . . section 42a–8–321 on security interests in securities . . . , a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . . ;

(b) value has been given; and

(c) the debtor has rights in the collateral.

CONN. GEN. STAT. ANN. § 42a–9–203(1) (West 1990) (amended 1997). A "security agreement" is "an agreement which creates or provides for a security interest," and " '[a]greement' means the bargain of the parties in fact as found in their language or by implication from other circumstances. . . ." CONN. GEN. STAT. ANN. §§ 42a–9–105(1), 42a–1–201(3) (West 1990 & Supp.1998).

Section 42a–8–321 provides that

(1) A security interest in a security is enforceable and can attach only if it is transferred to the secured party or a person designated by him pursuant to a provision of subsection (1) of section 42a–8–313.

. . . .

(3) A security interest in a security is subject to the provisions of article 9, but:

(a) No filing is required to perfect the security interest; and

(b) no written security agreement signed by the debtor is necessary to make the security interest enforceable. . . .

CONN. GEN. STAT. ANN. § 42a–8–321 (West 1990) (repealed 1997). Section 42a–8–313, in turn, provides that "[t]ransfer of a security or a limited interest, including a security interest, therein to a purchaser occurs only: (a) At the time he or a person designated by him acquires possession of a certificated security; . . . ." *Id.* § 42a–8–313(1) (repealed 1997).

Connecticut law defines a "security" as "either a certificated or an uncertificated security." CONN. GEN. STAT. ANN. § 42a–8–102(1)(c) (West 1990) (amended 1997). A "certificated security" is:

. . . [A] share, participation, or other interest in property of or an enterprise of the issuer or an obligation of the issuer which is (i) represented by an instrument issued in bearer or registered form; (ii) of a type commonly dealt in on securities exchanges

---

**5.** The debtor argues that Article 9 does not apply to the transfer because § 42a–9–104(h) states that Article 9 does not apply to "a right represented by a judgment." CONN. GEN. STAT. ANN. § 9–104(h) (West 1990 & Supp.1998). The debtor misconstrues § 42a–9–104(h). Under this section, the rights arising from a judgment may not serve as collateral for an Article 9 security interest. *See Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836, 840 (2nd Cir.1974) (applying New York's version of the UCC); 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 30–8 (4th ed.1995).

**6.** Although this ruling refers in the present tense to sections of Connecticut's versions of Articles 8 and 9 that were in effect at the time of the transfer, some of those statutory sections have since been repealed or amended.

or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and (iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests or obligations. *Id.* § 42a–8–102(1)(a) (amended 1997).

B.

■ As a threshold matter, the stock is a "certificated security" for UCC purposes. Although the debtor asserts that stock in a closely held corporation is not a certificated security, the comment to § 42a–8–102 states that "[i]nterests such as the stock of closely-held corporations...are intended to be included within the definitions of both certificated and uncertificated securities...." CONN. GEN. STAT. ANN. § 42a–8–102 cmt. 2 (West 1990). Moreover, many courts have held that certificates of stock in closely held corporations are certificated securities pursuant to UCC § 8–102. *See Thomas C. Thompson Sports, Inc. v. Farmers and Merchants Bank of Long Beach (In re Turley),* 213 B.R. 857, 861 (C.D.Cal.1997); *In re Domestic Fuel Corp.,* 70 B.R. 455, 462 (Bankr. S.D.N.Y.1987); *Hall v. Dichello Distribs., Inc.,* 6 Conn.App. 530, 540, 506 A.2d 1054, 1060 (1986), *cert. denied,* 200 Conn. 807, 512 A.2d 230 (1986); *Bahre v. Pearl,* 595 A.2d 1027, 1034 (Me.1991).

■ Applying the requirements of § 42a9–203, the court finds that the stock is in Wilson's possession [7] pursuant to an agreement that the stock would secure the debtor's debt to Wilson. Although the debtor asserts that the transfer was involuntary, Wareing was not compelled to hand the stock certificates to Murphy but surrendered them voluntarily. An involuntary transfer occurs when the transfer is beyond the debtor's personal control, as by operation of law, or when the debtor was a victim of fraud, misrepresentation, or coercion. *See Davis v. Suderov (In re Davis),* 169 B.R. 285, 295–96 (E.D.N.Y.1994). None of those circumstances are present in the instant case. The fact that Murphy threatened to obtain a turnover order is irrelevant; at the time the transfer occurred, he had not done so. "A threat to take action to collect a debt by legal means does not constitute such coercion as to transform the voluntary grant of a security interest into an involuntary transfer of property." *Bettis v. Bus. & Prof'l Adjustment Co. (In re Bloom),* 28 B.R. 571, 573 (Bankr. D.Or.1983). *See also Weisman v. Kaspar,* 233 Conn. 531, 549 n. 15, 661 A.2d 530, 538 n. 15 (1995) (finding that a foreclosure action and demand for payment on a mortgage was not an "unlawful act or threat" that rendered a transfer involuntary); *In re Goodwin,* 133 B.R. 141, 143 (Bankr.S.D.Ind.1990) ("Although [the debtor] might have felt compelled to agree to the Bond in order to protect her interests while the suit was pending, considerations of this type often compel debtors to agree to liens. Few debtors would give a creditor a security interest in their property if they could obtain the benefit they seek without doing so.").

■ A voluntary transfer creates a security interest, not a judicial lien. *See Bloom,* 28 B.R. at 572 (holding that the debtors' grant of an interest in their pickup truck created a security interest, not a judicial lien, because the grant was voluntary); *Lucas v. Fayette (In re Lucas),* 21 B.R. 794, 797 (Bankr. W.D.Mich.1982) (concluding that a lien the debtor gave to secure an appeal bond in a state court action was a security interest, not a judicial lien, because the lien was voluntarily offered and the debtor had agreed to its creation, its terms, and the property involved).

■ The debtor argues that the stock was not transferred pursuant to an agreement to create a security agreement. The court finds an agreement by implication from the circumstances of the transfer. The debtor was liable on a judgment debt to Wilson; the debtor refused to deliver the stock to the sheriff when served with the execution; Wilson's attorney asked for possession of the stock certificates; and the debtor's attorney obliged. The debtor apparently did not wish

---

7. While Murphy, not Wilson, has custody of the stock, possession by an agent satisfies the requirement of possession under the UCC. *See In re Fund Raiser Prods. Co., Inc.,* 163 B.R. 744, 749 (Bankr.E.D.Pa.1994).

the state-court judge to examine the unsatisfied execution with the sheriff's affidavit containing the debtor's opinion of a state-court judge. The only conceivable purpose for transferring the stock was to provide security for satisfaction of the judgment.

As to the second requirement in § 42a–9–203, Connecticut law provides that "a person gives 'value' for rights if he acquires them...as security for or in total or partial satisfaction of a preexisting claim." CONN. GEN. STAT. ANN. § 42a–1–201(44) (West 1990) (amended 1997). By virtue of the debtor's judgment debt to Wilson, the court finds that value was given and rejects the debtor's argument to the contrary.

It is undisputed that the debtor owned the stock and the debtor concedes he has rights in the collateral, so that the third requirement in § 42a–9–203 is met.

The court further finds that the security interest is enforceable and attachable under § 42a–8–321 because Murphy, a "person designated by [the secured party]," acquired possession of the stock, satisfying § 42a–8–313(1)(a). Lastly, because no filing is required to perfect a security interest in a security under § 42a–8–321(3), the security interest is perfected.

The court concludes that Wilson possesses a perfected security interest in the stock. Consequently, the debtor's argument that Wilson possesses a judicial lien because Murphy constructively levied on the stock in place of the sheriff is unavailing. Additionally, under these facts, Wilson could not possess a judicial lien because under Connecticut law "no attachment of shares of stock for which a certificate is outstanding shall be valid until such certificate is actually *seized by the officer* making the attachment, or is surrendered to the corporation which issued it." CONN. GEN. STAT. ANN. § 52–289 (West 1990 & Supp.1998) (emphasis added).

## V. CONCLUSION

Wilson's motion for relief from stay is granted, and the debtor's motion to avoid a judicial lien is denied.

It is

SO ORDERED.