In the Matter of Joseph L. DeLANCEY, Debtor.

Harvey S. BARR as Trustee in Bankruptcy of Joseph L. DeLancey, Plaintiff,

v.

JUNIATA VALLEY BANK, Allied Roofers Supply Corp., John F. Keer, Florence S. Keer, Eberts Bonsall and Kenneth E. Bonsall d/b/a O. Bonsall & Sons, Marla DeLancey, Joseph Nazario t/a Nazario Development Company, Nazario Brothers Corporation, United States Fidelity & Guarantee Company and Commercial Roofing Co., Inc., Defendants.

Bankruptcy No. 85 B 20100.
85 ADV. 6070.

United States Bankruptcy Court, S.D. New York.

Sept. 3, 1987.

Lambert & Weiss, New York City, for Allied Roofers Supply Corp.

Daniel Stern, New Bloomfield, Pa., for John F. Kerr, Florence S. Kerr, Eberts Bonsall and Kenneth E. Bonsall.

Walz & Walz, Newport, Pa., for Juniata Valley Bank.

Barr and Faerber, Spring Valley, N.Y., for Joseph DeLancey.

Coffey, McBride & Olsen, Melville, N.Y. (Craig R. Olsen, of counsel), for Joseph Nazario t/a Nazario Development Co., Nazario Bros. Corp.

## DECISION ON MOTION FOR SUMMARY JUDGMENT DIRECTING TURNOVER OF ESCROW FUND

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee of the Chapter 7 debtor, Joseph L. DeLancey, has moved for an order granting summary judgment with respect to his adversary action for the turnover of a fund of approximately $46,000 held in escrow by the Juniata Valley Bank (the "Bank") pursuant to state court proceedings in the Commonwealth of Pennsylvania. The key issue is whether or not this escrow fund is property of the estate of Joseph L. DeLancey within the meaning of 11 U.S.C. § 541. The trustee contends that the Bank is a custodian as defined in 11 U.S.C. § 101(10) who must deliver the fund to the trustee in accordance with 11 U.S.C. § 543(b)(1).

Various competing creditor interests have also asserted rights to the fund held by the bank. The parties have stipulated as to certain undisputed facts. The factual background reveals that the debtor, Joseph L. DeLancey, and his wife, were principals of a roofing corporation known as Commercial Roofing, Inc., which had an office in Allentown, Pennsylvania. On March 11, 1983, Commercial Roofing, Inc. ordered certain equipment and materials from Russ Hines & Associates, Inc. of Auburn, New York in the amount of $48,859.96 for delivery to a site in Millerstown, Pennsylvania. The order, which was signed by the debtor, Joseph L. DeLancey, as president of Commercial Roofing, Inc., contained a note reading: "Please Invoice: Joseph L. DeLancey, P.O. Box H, Millerstown, Pa. 17062."

After the purchase of the roofing equipment from Russ Hines & Associates, Inc., various entities filed U.C.C. financing statements in an attempt to perfect security interests with respect to the equipment. On April 4 and 11, 1983, the Bank filed U.C.C. financing statements against Commercial Roofing, Inc., Joseph DeLancey and his wife, Marla DeLancey. On April 25, 1983, Allied Roofers Supply Corp. ("Allied") of East Rutherford, New Jersey filed U.C.C. financing statements against Commercial Roofing, Inc.. On May 11 and 14, 1984, United States Fidelity and Guaranty Company ("USF & G") filed U.C.C. financing statements against Joseph L. DeLancey and his wife, Marla DeLancey. On April 4, 1984, Nazario Brothers Corporation obtained a preliminary writ of attachment against the equipment and the proceeds. On February 27, 1984, John and Florence Kerr obtained a judgment against the debtor. On March 2, 1984, Eberts Bonsall and Kenneth Bonsall d/b/a N.O. Bonsall & Sons obtained a judgment against the debtor. On November 9, 1984, the Sheriff of Perry County, Pennsylvania, on behalf of Kerr and Bonsall, served a writ of execution against the debtor's property.

In an action which was commenced by Allied and in which the other competing claimants intervened, Judge Keith Quigley of the Pennsylvania Court of Common Pleas, Perry County Branch, directed on October 1, 1984, that the roofing equipment and machinery in question should be sold, after which the proceeds from the sale should be deposited in escrow with the Bank subject to his determination as to an appropriate distribution of the funds. The net proceeds held by the Bank amount to $44,217.

On March 13, 1985, the state court held a hearing and a *Decree Nisi* was entered which declared that:

1) Joseph DeLancey as an individual was the owner of the equipment which had been sold to generate the funds being held by the Bank.

2) Neither the Bank nor Allied was a properly secured party against the owner of said equipment.

3) As holders of perfected judgment liens, John F. Kerr and N.O. Bonsall Sons had priority over both the Bank and Allied and were entitled to have their claims satisfied from the funds being held by the Bank.

On March 25, 1985, Joseph Nazario, t/a Nazario Development Company, and Nazario Brothers (collectively known as "Nazario") were permitted to intervene in the Pennsylvania action, based on a claim that the debtor, his wife and his company agreed to furnish materials for a Nazario project and that they breached the contract. On April 14, 1984, Nazario commenced suit against Commercial Roofing, Inc., the debtor and his wife in the Federal District Court for the Middle District of Pennsylvania. On the same day, Nazario caused a writ of attachment to be levied against the escrow account in the Bank's control.

On May 30, 1985, Nazario obtained a judgment on consent in the amount of $79,054.90 against Commercial Roofing, Inc. and Marla DeLancey. Nazario could not obtain a judgment against the debtor, Joseph L. DeLancey, who was also a defendant in the District Court case, because Nazario was enjoined from proceeding further against him by reason of the automatic stay imposed under 11 U.S.C. § 362.

In light of these facts, Judge Quigley modified his *Decree Nisi* of March 13, 1985 and ruled on July 24, 1985 that Nazario's interest in the proceeds had priority over the interests of the other judgment lienors. This ruling was based on the fact that Nazario's priority "attached on the date of service of the writ of attachment on the Bank, or April 4, 1984." Judge Quigley stated the law in Pennsylvania to be as follows:

Service of an attachment creates a valid lien which prevails over a subsequent execution. *Appeal of Wagner*, 13 W.N.C. 505 (Pa.1883). This is true even though the filing of the writ of execution takes place before judgment is obtained on the attachment. *Rice v. Wolinszius* [Walinszius], 12 Pa.Super. 329 (1900).

Furthermore, Rule 3137 of the Pennsylvania Rules of Civil Practice states:

When tangible personal property is both levied upon and attached under two or more writs of separate plaintiffs, priority of distribution as between levying and attaching plaintiffs shall be determined by the time of delivery of the writ to the Sheriff in the case of levy, and from the date of service of the writ upon the garnishee in the case of attachment.

On July 24, 1985, the Exceptions of all of the parties in the state court action to the *Nisi Decree* of March 13, 1985 were dismissed, other than the Exceptions filed by Nazario Brothers Corporation. Nazario's Exceptions were sustained and Nazario was granted priority with respect to the escrow funds held by the Bank. The state court directed the Bank to pay the balance of the fund it held in escrow to Nazario Brothers Corporation, and stated:

Nazario's judgment far exceeding the amount on deposit, it is not necessary to delineate further priorities.

On March 12, 1986, this court denied the debtor's discharge in bankruptcy for failing to keep or preserve books, documents, records and papers, from which the debtor's financial condition might be ascertained, as required by 11 U.S.C. § 727(a)(3). *United States Fidelity & Guaranty v. DeLancey (In re DeLancey)*, 58 B.R. 762 (Bankr.S.D.N.Y.1986).

## DISCUSSION

Summary judgment under Fed.R. Civ.P. 56, as adopted by Bankruptcy Rule 7056, is an extraordinary remedy which should be granted with great caution and only where it appears that there is no genuine issue as to any material fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984). When the court considers a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Hamilton v. Smith*, 773

F.2d 461, 466 (2d Cir.1985); *Heyman v. Commerce and Industry Insurance Company*, 524 F.2d 1317, 1320 (2d Cir.1975). In the instant case, all of the parties in this adversary proceeding seek a determination of the summary judgment motions based upon their submission of a stipulation of undisputed facts.

■ We start, as we must, with the findings of fact made by the state court in Pennsylvania in which the debtor and all of the defendants in this adversary action, except the trustee in bankruptcy, participated. In his Memorandum Decision dated July 24, 1985, Judge Quigley described one of his basic findings as follows:

> At its March 13, 1985 hearing, the Court found as a matter of fact that various equipment and machinery used by Commercial Roofing belonged to Joseph DeLancey in his individual capacity. The fund generated from the sale of that equipment has been deemed a personal asset as well.

*Allied Roofers Supply Corporation and Juniata Valley Bank of Mifflintown v. Commercial Roofing, Inc. and Joseph and Marla DeLancey.* Memorandum Decision, The Court of Common Pleas of the 41st Judicial District of Pennsylvania-Perry County Branch, July 24, 1985, p. 2. The Common Pleas Court in Pennsylvania found that the roofing equipment and the funds generated from the sale of that equipment were personal assets of this debtor. This finding is conclusive against these defendants under the doctrine of collateral estoppel.

> Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). *See Forstall v. McCall (In re McCall)*, 76 B.R. 490, 493 (Bankr.E.D.Pa. 1987) (Factual findings issued in an amend-ed *Decree Nisi* in the Pennsylvania Court of Common Pleas could not later be disputed in the Bankruptcy Court).

The order for distribution of the escrow funds entered by the Court of Common Pleas may not now be appealed because further proceedings in the state court were stayed by that court's order, dated August 8, 1985, pending the bankruptcy litigation in this court. The stay of appeal does not detract from the application of the doctrine of collateral estoppel because the pendency of an appeal would not affect the finality of the order in the Pennsylvania Court. This point was early expressed as follows by the United States Supreme Court in *The Johnson Co. v. Wharton*, 152 U.S. 252 at 261, 14 S.Ct. 608 at 611, 38 L.Ed. 429 (1894) with regard to the finality of an order for purposes of collateral estoppel which was entered by the United States District Court for the Eastern District of Pennsylvania:

> ... [Its] operation cannot be restricted to those cases, which, after final judgment or decree, may be taken by appeal or writ of error to a court of appellate jurisdiction.

Similarly, the absence of an appeal did not prevent the application of the doctrine of collateral estoppel to findings of the Pennsylvania Court of Common Pleas in *Commercial Union Assurance Company v. Pucci*, 523 F.Supp. 1310 at 1318 (W.D.Pa. 1981), where the court said:

> Although the Puccis have not yet decided whether to take an appeal from the judgment of the court of common pleas, we need not delay further the entry of this opinion and order because the pendency of an appeal would not affect the finality of the judgment for the purpose of applying the doctrine of collateral estoppel. *Cf. In re Meade Land & Development Co., Inc.*, 1 B.R. 279, 283 (E.D.Pa.1979) (under Pennsylvania law, a judgment is final even though an appeal has been taken, if the party who initiated the appeal has not filed a supersedeas bond); *Wallace's Estate*, 316 Pa. 148, 153, 174 A. 397, 399 (1934) ("when a court of competent jurisdiction has determined a litigated cause on its merits, the judg-

ment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit"); *Elkin's Petition*, 289 Pa. 327, 329, 137 A. 459, 460 (1927) ("[a]n appeal from a final judgment of the court of common pleas does not disturb the finality of that judgment while it remains unreversed"); *Woodward v. Carson*, 86 Pa. 176, 178 (1878) (writ of error does not destroy effect of judgment); *Restatement of Judgments* § 41, Comment d (1942) ("[a]t common law a pending writ of error does not vacate a judgment"). *See also Reed v. Allen*, 286 U.S. 191, 199, 52 S.Ct. 532, 533, 76 L.Ed. 1054 (1932) ("Where a judgment in one case has successfully been made the basis for a judgment in a second case, the second judgment will stand as *res judicata*, although the first judgment be subsequently reversed"). Therefore, applying the doctrine of collateral estoppel, we adopt as conclusive in this case the finding of the Court of Common Pleas of Beaver County that the actual cash value of the damage sustained by the dwelling at 249 Merchant Street was $25,000.

*See Eastgate Enterprises, Inc. v. Funk (In re Meade Land Development Co., Inc.),* 1 B.R. 279 at 283 (Bankr.E.D.Pa.1979) ("In the opinion of this Court, the judgment in the Court of Common Pleas of Philadelphia ... required no further judicial action and was final in nature").

There are some early cases in Pennsylvania holding that a state court judgment is not considered a final judgment for purposes of *res judicata* or collateral estoppel while an appeal is pending, which have been relied upon by two federal court decisions in their interpretation of the concept of finality. *United States v. Employers Mutual Liability Insurance Co. of Wisconsin*, 495 F.Supp. 840, 842 (W.D.Pa.1980) and *In re Levitt*, 18 B.R. 595, 598 n. 11 (Bankr.E.D.Pa.1982). The Third Circuit Court of Appeals has since been reluctant to resolve this doctrinal dilemma in Pennsylvania and has stayed final disposition of a case until the pending appeal was determined in the Pennsylvania State Court. *Bailey v. Ness*, 733 F.2d 279 (3rd Cir.1984).

■ In the instant case there is no pending appeal from the decision of the Court of Common Pleas because that court has stayed further proceedings there indefinitely in light of the bankruptcy proceedings in this court. Accordingly, this court will start with the fact that the debtor had commenced his Chapter 7 case in this court on March 5, 1985, which was prior to the March 13, 1985 hearing in the Court of Common Pleas. This court will also accept the finding of fact made by the Court of Common Pleas that the roofing equipment and the funds generated from the proceeds of sale were property of the debtor, individually. At that point the escrow funds became property of the estate. Pursuant to 11 U.S.C. § 541(a)(1), property of the estate is defined to consist "of all legal or equitable interests of the debtor in property as of the commencement of the case." Thus, property may be treated as property of the estate despite the fact that it is then in the possession of secured creditors, because "Congress intended a broad range of property to be included in the estate." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). (Property seized by the IRS one day before the commencement of the bankruptcy case).

■ In the instant case, Nazario had an interest in the fund held in escrow by the Bank as a result of the issuance of a writ of attachment on April 4, 1984 by the United States District Court for the Middle District of Pennsylvania, almost one year prior to the commencement of the debtor's bankruptcy case on March 5, 1985. This prejudgment attachment did not then transfer title to Nazario, because under Pennsylvania law, a prejudgment attachment is inchoate up until the time of judgment because until then the amount of the lien is not conclusively established. *Fidelity Bank v. Commonwealth Marine and General Assurance Company, Ltd.*, 581 F.Supp. 999 at 1016 (E.D.Pa.1984) ("In order to have a valid attachment, a creditor must have a judgment to be enforced").

In view of the fact that title to the escrow fund did not pass to Nazario when Nazario obtained a writ of attachment on April 4, 1984, it follows that when the debtor commenced his Chapter 7 case on March 5, 1985, the Bank was then a custodian of property of the estate. A "custodian" within the meaning of 11 U.S.C. § 101(10) means:

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;

As an escrow agent appointed by the Court of Common Pleas for purposes of distribution of the funds, the Juniata Valley Bank was a "custodian" of property of the estate. *Brown v. Dellinger (In re Brown)*, 734 F.2d 119 (2d Cir.1984); *In re CCN Realty Corp.*, 19 B.R. 526 (Bankr.S. D.N.Y.1982). Pursuant to 11 U.S.C. § 543(b), a custodian must transfer to a subsequently appointed trustee in bankruptcy "any property of the debtor" in such custodian's possession. Therefore, the Bank is required to turn over the fund to the trustee in bankruptcy for distribution in accordance with the priorities established under the Bankruptcy Code.

## THE TRUSTEE'S STRONG ARM POSITION

The trustee argues that since the Court of Common Pleas determined that Nazario had first priority over the other defendants, the funds should be awarded to the trustee for unsecured creditors because the trustee may avoid Nazario's lien claim pursuant to 11 U.S.C. § 544(a)(1) and then preserve the lien for the benefit of the estate in accordance with 11 U.S.C. § 551. Manifestly, if the trustee is in a position to avoid Nazario's lien he may employ 11 U.S.C. § 551 for the benefit of the estate.

Preservation for the estate has been designed to prevent a windfall to junior lien holders which would otherwise occur when a senior lien has been avoided.

*Connelly v. Marine Midland Bank,* 61 B.R. 748, 750 (W.D.N.Y.1986). Moreover, the trustee contends that while the Court of Common Pleas granted senior secured status to Nazario because of a prior writ of attachment, Nazario did not perfect the lien by obtaining a subsequent judgment against the debtor; Nazario's judgment was entered against the debtor's wife and Commercial Roofing only. No judgment could be entered against the debtor because of his pending bankruptcy case and the resulting automatic stay imposed under 11 U.S.C. § 362(a). Therefore, in the exercise of his status as a hypothetical judgment lien creditor at the time the debtor's Chapter 7 case was commenced and as empowered under the so-called strong arm provision expressed in 11 U.S.C. § 544(a)(1), the trustee maintains that he may set aside Nazario's inchoate or conditional lien, which was never perfected against the debtor or his property, because Nazario did not enter any judgment against the debtor. This position has merit, as expressed by the District Court in *In re Savidge,* 57 B.R. 389, 391 (D.Del.1986), as follows:

The fact that ITT would have had a lien dating back to the date of the attachment, if it had obtained a judgment against Savidge before he filed for bankruptcy, does not create secured status for ITT when, in fact, Savidge filed for bankruptcy prior to ITT's lien being perfected by a judgment. A lien, created by a domestic attachment, is conditional upon the subsequent recovery of a judgment. If judgment cannot be obtained, then the conditional lien is dissolved.

Notwithstanding the trustee's plausible argument in favor of the unsecured creditors of this estate, there nevertheless remains unresolved questions of fact which preclude the granting of full summary judgment in favor of the trustee. It is not clear as to whether all of the secured creditors of the debtor participated in the litigation in the Court of Common Pleas. It is also not clear as to whether or not there are other secured creditors whose positions might be senior to that of the trustee. Additionally, it appears that the Juniata

Valley Bank filed a UCC financing statement on April 8, 1983, against the debtor's equipment and its proceeds. This filing would seem to give the Bank seniority status over the Nazario claim. Therefore, this court will have to determine the relative priorities of all of the creditors of the debtor, based upon the order of distribution mandated under the Bankruptcy Code.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K).

2. The trustee is entitled to a partial summary judgment and an order directing the Juniata Valley Bank to turn over the proceeds from the sale of the debtor's equipment which the Bank now holds in escrow because the Bank is a custodian within the meaning of 11 U.S.C. § 101(10), which must comply with 11 U.S.C. § 543(b).

3. The balance of the trustee's motion for summary judgment is denied.

4. In light of the foregoing, Nazario Brothers' motion for summary judgment declaring that Nazario Brothers is entitled to the escrow funds and for relief from the automatic stays is denied.