# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1227

_____

In re: Donald Nangle,                          *
                                               *
                 Debtor,                        *
                                               *
_____                                    *
                                               *
Patricia A. Siemer,                            *
                                               *   Appeal from the United States
                 Appellee,                      *   Bankruptcy Appellate Panel
                                               *   for the Eighth Circuit.
        v.                                      *
                                               *
Donald Nangle,                                 *
                                               *
                 Appellant.                     *

_____

Submitted: September 12, 2001

Filed: December 7, 2001   (Corrected: 12/19/01)

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT, and BOGUE,[1] Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

        After Donald Nangle filed a petition under Chapter 7 of the Bankruptcy Code, Patricia Siemer brought an adversary proceeding against him claiming that his debts

_____

        [1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

to her were nondischargeable. When the bankruptcy court granted Ms. Siemer's motion for summary judgment, Mr. Nangle appealed, and the United States bankruptcy appellate panel for the Eighth Circuit affirmed the judgment of the bankruptcy court in part and reversed it in part. *See In re Nangle*, 257 B.R. 276 (B.A.P. 8th Cir. 2001). We affirm the bankruptcy appellate panel's judgment in part and reverse it in part.

## I.

This case arises from a lawsuit that Ms. Siemer filed some years ago against Mr. Nangle in Illinois state court. The complaint in that case contained two counts: Count I sought only compensatory damages for violations of federal debt collection statutes, and Count II sought both compensatory and punitive damages for violations of Illinois consumer fraud statutes. Rather than making a specific finding as to each count, the jury in that case found generally for Ms. Siemer. It is nonetheless plain that, whatever else it may have done, the jury must have found for Ms. Siemer on Count II because it awarded her punitive damages.

Under 11 U.S.C. § 523(a)(6) a debt is not dischargeable in bankruptcy if it is "for willful and malicious injury by the debtor to another entity." Both the bankruptcy court and the bankruptcy appellate panel applied the doctrine of collateral estoppel and concluded that the debt created by the Illinois judgment arose from Mr. Nangle's willful and malicious conduct. The critical question, we believe, is whether the Illinois judgment establishes that Mr. Nangle's injury to Ms. Siemer was willful and malicious within the meaning of § 523(a)(6).

In Ms. Siemer's case in Illinois, the trial judge instructed the jury that before it could find Mr. Nangle liable for punitive damages it had to find that his conduct was "wilful and wanton," and the trial judge defined such conduct as "a course of action which shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard of a person's own safety and the

safety of others."   Mr. Nangle asserts that the jury's finding could have been based on a belief that his actions showed an utter indifference to Ms. Siemer's safety, not that he intended her harm.  If so, the jury's finding would not meet the "willful" standard of § 523(a)(6) because under that statute reckless or negligent conduct is not sufficient to show willfulness.  *See Kawaauhau v. Geiger,* 523 U.S. 57, 64 (1998).

As the bankruptcy appellate panel noted, however, "the consumer fraud causes of action brought by Siemer did not involve matters of 'safety.'"  Like the appellate panel, we do not believe that a jury could have concluded that Mr. Nangle's repeated communications with Ms. Siemer and his misrepresentations to her, which furnished the basis for her claims, constituted a threat to Ms. Siemer's safety.  We believe, instead, that the jury's verdict could only have been based on a conclusion that Mr. Nangle's acts involved an actual or deliberate intention to harm Ms. Siemer.  It therefore follows that Mr. Nangle inflicted a "willful" injury on Ms. Siemer for the purpose of § 523(a)(6).  We conclude, moreover, that his conduct was "malicious" within the meaning of that statute because it was "targeted at the creditor," namely, Ms. Siemer.  *See In re Long,* 774 F.2d 875, 881 (8th Cir. 1985).  Hence the debt arising from the Illinois judgment is not dischargeable.

## II.

Ms. Siemer registered the Illinois judgment as a foreign judgment in Missouri. In an attempt to collect her judgment, she filed a motion in Missouri state court to compel Mr. Nangle to produce documents disclosing his assets, and the court granted the motion.  When Mr. Nangle did not comply with its order, the court held him in contempt and imposed what it termed a "compensatory fine" against Mr. Nangle. Although it is not altogether clear how the Missouri court arrived at the amount of the contempt judgment, the bankruptcy appellate panel stated that "the parties refer to it as a 'doubling' of the underlying Illinois Judgment."

The bankruptcy court concluded that the debt created by the contempt order was not dischargeable, but the appellate panel reversed that determination. The key question, we believe, is whether the contempt order established that Mr. Nangle's failure to comply with a court order constituted "willful and malicious" conduct. We believe that it did and therefore that the debt arising from it is nondischargeable under § 523(a)(6).

Some courts have held that failure to comply with a court order constitutes willful and malicious conduct as a matter of law within the meaning of § 523(a)(6). *See, e.g., In re Allison,* 176 B.R. 60, 64 (S.D. Fla. 1994). We do not believe, however, that it is necessary in the present circumstances to express a view one way or the other on that matter. In this case, the Missouri state court that entered the contempt order found explicitly that Mr. Nangle's conduct was "willful." That court, moreover, stated that Mr. Nangle's actions were "designed to interfere with [Ms. Siemer's] efforts to collect the judgment entered against him herein." It follows that Mr. Nangle's conduct was malicious because it was "targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause ... harm," *Long*, 774 F.2d at 881.

Although the bankruptcy appellate panel concluded that "the record is insufficient to determine" whether Mr. Nangle's contempt was intended to inflict injury on Ms. Siemer or on the court itself, it is not a matter of mutually exclusive alternatives: We think it perfectly clear that the state court held that Ms. Siemer was a target, if not the only target, of Mr. Nangle's willful refusal to obey the court order.

Finally, we believe that the contempt order is a final judgment for collateral estoppel purposes. The bankruptcy appellate panel held otherwise because it concluded that under the relevant state law a civil contempt order is not final until it has been enforced. Although that is true for the purposes of an appeal, " '[r]ecent decisions have relaxed traditional views of the finality requirement' " in the collateral

estoppel context by applying the doctrine " 'to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief,' " let alone enforced, *see John Morrell v. Local Union 304A*, 913 F.2d 544, 564 (8th Cir. 1990) (quoting 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4434 at 321 (1981)), *cert. denied*, 500 U.S. 905 (1991). According to the *Restatement (Second) of Judgments* § 13 cmt. b (1982)*,* moreover, "execution or enforcement" are not pre-requisites for meeting the finality standard of claim preclusion, and, by implication, the finality standard of collateral estoppel as well.

For the purposes of collateral estoppel, a judgment must simply be "sufficiently firm to be accorded conclusive effect." *Restatement (Second) of Judgments* at § 13. This may mean " 'little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.' " *John Morrell*, 913 F.2d at 563 (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986 (1962)). We believe that the Missouri state court's determination that Mr. Nangle acted willfully and maliciously is a sufficiently final say on the matter to allow it an estoppel effect and that relitigating it would create the kind of "needless duplication of effort and expense" that collateral estoppel seeks to prevent. *Restatement (Second) of Judgments* at § 13 cmt. b. Both Ms. Siemer and Mr. Nangle were "fully heard" in the Missouri state court proceeding, the court filed a "reasoned opinion," and it gave no indication that its judgment was tentative or likely to be changed. *See id.* While its judgment may not be subject to appeal, which is one of the considerations relevant to determine whether a judgment is final for collateral estoppel purposes, that in itself is not enough to deny it preclusive effect. *See John Morrell*, 913 F.2d at 563; *In Re Brown*, 951 F.2d 564, 569 (3d Cir. 1991). We therefore conclude that the contempt order was final for the purposes of collateral estoppel.

### III.

In sum, we believe that the debt arising out of the Illinois judgment and the Missouri contempt order are not dischargeable under § 523(a)(6). We affirm the bankruptcy appellate panel's judgment with respect to the Illinois judgment, but reverse it with respect to the contempt order, and we remand to the panel, with instructions to remand to the bankruptcy court for the entry of an appropriate judgment.

BRIGHT, Circuit Judge, would affirm the judgment of the bankruptcy appellate panel in its entirety.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.