**In re Tommy N. FOUSHEE, Debtor.**

**Dianna L. Suggitt, Plaintiff,**

v.

**Tommy N. Foushee, Defendant.**

**Bankruptcy No. 01–02312S.**
**Adversary No. 01–090203S.**

United States Bankruptcy Court,
N.D. Iowa,
Western Division.

Aug. 27, 2002.

Wil L. Forker, Sioux City, IA, for Tommy N. Foushee and Northwest Foot and Ankle Associates, PC.

John C. Gray, Kem W. Swarts, Sioux City, IA, for Dianna L. Suggitt.

## ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WILLIAM L. EDMONDS, Bankruptcy Judge.

The matter before the court is Dianna L. Suggitt's motion for summary judgment. Prior to debtor's bankruptcy petition, Suggitt obtained a jury verdict in her favor that included an award of punitive damages in the amount of $150,000. Suggitt contends that the state court verdict establishes a claim for willful and malicious injury as a matter of law. Hearing was held July 30, 2002 in Sioux City. John C. Gray appeared for Suggitt. Wil L. Forker represented defendant Tommy N. Foushee.

### Standard for Summary Judgment

Suggitt is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with [supporting] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), incorporated by Fed.R.Bankr.P. 7056. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.*" Fed.R.Civ.P. 56(e) (emphasis added).

### Factual Background

Foushee was formerly licensed as a podiatrist in the State of Iowa. He has surrendered his license. Suggitt was em-

ployed as a receptionist by Foushee and his professional corporation, Northwest Foot and Ankle Associates, P.C. In February 2000, Suggitt filed a complaint with the Iowa Board of Podiatry Examiners relating to a potential substance abuse problem regarding Foushee. In early March 2000, in response to a subpoena, Suggitt turned patient records over to the Podiatry Board. On or about March 20, 2000, Suggitt was discharged from her employment.

On April 24, 2000, Foushee filed a petition in the Iowa District Court for Woodbury County for injunction and other relief against Suggitt. Among other allegations, the petition made claims of defamation and breach of confidentiality. Suggitt answered and filed a counterclaim for violation of Iowa Code § 272C.8, a "whistleblower" statute. That section provides in relevant part—

2. A person shall not be civilly liable as a result of filing a report or complaint with a licensing board or peer review committee, or for the disclosure to a licensing board or its agents or employees, whether or not pursuant to a subpoena of records, documents, testimony or other forms of information which constitute privileged matter concerning a recipient of health care services or some other person, in connection with proceedings of a peer review committee, or in connection with duties of a health care board. However, such immunity from civil liability shall not apply if such act is done with malice.

3. A person shall not be dismissed from employment, and shall not be discriminated against by an employer because the person filed a complaint with a licensing board or peer review committee, or because the person participated as a member, agent or employee of a licensing board or peer review committee, or presented testimony or other evidence to a licensing board or peer review committee.

Any employer who violates the terms of this section shall be liable to any person aggrieved for actual and punitive damages plus reasonable attorney fees.

Iowa Code § 272C.8(2) and (3).

Foushee dismissed his petition on April 24, 2001, the day of trial in state court. After trial on the counterclaim, the instructions given to the jury included the following:

INSTRUCTION NO. 1

In this case, Dianna Suggitt, a former employee of Northwest Foot and Ankle Associates and Dr. Tommy Foushee, claims that she was discriminated against or dismissed from her employment because she filed a complaint with or provided testimony or other records to the Iowa Podiatry Board. She seeks actual and punitive damages from the plaintiffs.

Dr. Tommy Foushee and Northwest Foot and Ankle Associates deny that Dianna Suggitt was dismissed from her employment. They also deny that Ms. Suggitt was discriminated against because she filed a complaint with the Podiatry Board of Examiners or provided testimony or other records to the Podiatry Board.

INSTRUCTION NO. 9

If you find Dianna Suggitt was dismissed or discriminated against by her employer because she filed a complaint with the Podiatry Board or because she presented testimony or other records to the Podiatry Board, Dianna Suggitt is entitled to both actual and punitive damages.

INSTRUCTION NO. 10

Dr. Foushee and Northwest Foot and Ankle Associates are liable to Dianna Suggitt if Dianna Suggitt was either dismissed from employment or discriminated against because she filed a complaint with the Podiatry Board or gave records to the investigator for the licensing board.

The jury returned a special verdict finding in favor of Suggitt and awarding $12,000 actual damages and $150,000 in punitive damages. On April 26, 2001, judgment was entered in the amount of $162,000 plus interest and costs.

On June 27, 2001, Foushee filed a Chapter 7 bankruptcy petition. On July 2, 2001, the state court entered an order taxing attorney fees to Foushee in the amount of $8,996.15.

Suggitt filed a timely complaint in this court objecting to the dischargeability of her claim against Foushee as a debt for willful and malicious injury. Suggitt now moves for summary judgment.

### Discussion

■ The court first clarifies the scope of this decision. Suggitt's claim arose out of Foushee's conduct in 2000. Iowa Code § 272C.8 provides that a claimant under that section may be awarded actual damages, punitive damages and reasonable attorney fees. A bankruptcy claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Therefore, Suggitt's entire claim is a prepetition claim. The timing of the liquidation of attorney fees is not relevant to the dischargeability issue. The court order taxing attorney fees is void as a violation of the automatic stay of § 362. Entry of the order, however, had no effect on the claim itself.

■ Moreover, the nature of the damages does not determine dischargeability of the claim. "The language of section 523(a)(6) is directed at the nature of the conduct which gives rise to the debt, rather than the nature of the debt." *Johnson v. Miera (In re Miera)*, 926 F.2d 741, 745 (8th Cir.1991). Section 523(a)(6) excepts "*any debt* for willful and malicious injury." *Id.* In Suggitt's case, the injury was the dismissal or discrimination prohibited by Iowa Code § 272C.8(3). If the court finds Foushee's conduct constituted willful and malicious injury, all debt arising from that conduct, including actual damages, punitive damages and attorney fees, will be held nondischargeable. *Miera* at 745; *see also Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (§ 523(a)(2)(A), excepting debt for money "to the extent obtained" by fraud, prevents discharge of all liability arising from fraud, including statutory treble damages). Therefore, although the motion for summary judgment seeks a ruling only as to the award of punitive damages, the court will rule on the entire claim.

■ The question on summary judgment is the "threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). At the hearing on the motion, counsel offered that Foushee's view of the confidentiality of patient records is a relevant issue. If so, the issue was either raised or should have

been raised at trial in state court. The jury found that Foushee discriminated against or dismissed Suggitt for filing a complaint or for providing testimony or other records to the licensing board. The verdict and award of punitive damages establish that Foushee's conduct was wrongful. A claim that Foushee acted out of justifiable concern for patient confidentiality is inconsistent with the jury's findings, and the claim is barred by the general rule of claim preclusion. *Arnevik v. University of Minnesota Board of Regents*, 642 N.W.2d 315, 319 (Iowa 2002). Because there are no issues of fact to be tried, the court will rule on the summary judgment motion.

Suggitt asks the court to rule that her claim against Foushee is nondischargeable as a matter of law. She contends that the doctrine of collateral estoppel, or issue preclusion, establishes that the debt is for willful and malicious injury.

■■■■ The determination of dischargeability under § 523(a)(6) is within the exclusive jurisdiction of the bankruptcy court. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 658 n. 10, 112 L.Ed.2d 755 (1991) (describing history of dischargeability jurisdiction); *see generally* 4 Collier on Bankruptcy & ¶ 523.03 (15th ed. rev.2002). Nevertheless, a creditor may establish the elements of nondischargeability by the preclusive effect of a state court judgment. *Grogan v. Garner*, 111 S.Ct. at 658 & n. 11. The creditor's burden is to prove an exception to discharge by a preponderance of the evidence. *Id.* at 659.

■■■■ The court must apply the substantive law of issue preclusion of Iowa, the forum state; it must give preclusive effect to the judgment against Foushee if

an Iowa court would do so. *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir.1999), *cert. denied*, 528 U.S. 931, 120 S.Ct. 330, 145 L.Ed.2d 258 (1999). Under Iowa law, a party is precluded from relitigating an issue decided against him when (1) there is an identity of issues in the current and prior litigation; (2) the issue was raised and actually litigated in the prior action; (3) the issue was material and relevant to the disposition of the prior action; and (4) determination of the issue was necessary and essential to the prior judgment. *Hobson Mould Works, Inc. v. Madsen (In re Madsen)*, 195 F.3d 988, 989 (8th Cir.1999) (citing *Dolan v. State Farm Fire & Cas. Co.*, 573 N.W.2d 254, 256 (Iowa 1998)).

The dispute in this case is whether the jury verdict meets the first requirement for issue preclusion. Does the present action involve the same issue decided in state court?

Suggitt argues that the provision in § 272C.8(3) for punitive damages is a determination by the Iowa legislature that a violation of that section constitutes "willful and wanton" disregard for an employee's rights as a matter of law. This may be a correct reading of Iowa law. *See* Iowa Code § 668A.1 (award of punitive damages requires finding defendant's conduct "constituted willful and wanton disregard for the rights or safety of another"); *see also Tullis v. Merrill*, 584 N.W.2d 236, 241 (Iowa 1998) (upholding award for punitive damages for firing employee who demanded wages due; trial court could have found retaliatory discharge was in "willful and wanton disregard" for employment rights).

■■■■ It may be, however, that the willful and wanton standard is over-inclusive because it includes recklessness. Iowa law defines willful and wanton conduct as conduct in which "the actor has

intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *McGough v. Gabus,* 526 N.W.2d 328, 334 (Iowa 1995). "[M]alice must apply to a heightened level of culpability which goes beyond recklessness if it is to have a meaning independent of willful." *In re Miera,* 926 F.2d 741, 743 (citing *Barclays American/Business Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir.1985)).

Citing *Combs v. Richardson,* 838 F.2d 112, 117 (4th Cir.1988), Foushee argues that issue preclusion should not apply, because the Iowa District Court did not use the same standard that the Eighth Circuit has made applicable to cases under 11 U.S.C. § 523(a)(6). The jury was not instructed on the definition of "malice" or "willful and malicious injury." The *Combs v. Richardson* case was decided before the Supreme Court had expressly held that the principles of issue preclusion apply in dischargeability proceedings. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 658 & n. 11, 112 L.Ed.2d 755 (1991). The Fourth Circuit was concerned that the issue preclusion doctrine be applied cautiously so as not to undermine the bankruptcy policy of the fresh start. *Combs v. Richardson,* 838 F.2d at 116. In that case, the bankruptcy court granted summary judgment on the creditor's claim under § 523(a)(6) after reviewing the verdict form and jury instructions. The Fourth Circuit affirmed, finding "complete congruence" between the instructions and the standard for willful and malicious injury under § 523(a)(6). *Id.* at 117. The court stated that in many cases, the bankruptcy court would be required to examine a more complete record of the state court trial. *Id.* at 114.

Conduct that is "willful" is intentional or deliberate. *In re Geiger,* 113 F.3d 848, 852 (8th Cir.1997), *aff'd by, Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *Barclays American/Business Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 880 (8th Cir. 1985). "Malicious" conduct is an act done with an intent to cause injury. *Geiger,* 113 F.3d at 852. It is conduct "targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause ... harm." *In re Long,* 774 F.2d at 881. The standard of proof of malice "does not require spite, ill will, or a personal animosity." *Johnson v. Fors (In re Fors),* 259 B.R. 131, 137 (8th Cir. BAP 2001).

Eighth Circuit cases show that a bankruptcy court may find preclusion even though a jury has not been instructed expressly on "malice," if the record shows nonetheless that the issue of willful and malicious injury has been already decided. In *Johnson v. Miera (In re Miera),* 926 F.2d 741 (8th Cir.1991), the creditor was awarded compensatory and punitive damages in state court for civil battery. The jury instructions stated that the creditor was entitled to punitive damages if the debtor's conduct showed "willful indifference to the rights" of the creditor, which was defined as acting with "a deliberate lack of concern for the rights of others." In dischargeability litigation in bankruptcy court, the debtor argued that the issue decided in state court was whether he had shown willful indifference to the rights of others, not whether his conduct was malicious. *Id.,* 926 F.2d at 743. The bankruptcy court granted summary judgment for the creditor. Applying the elements of § 523(a)(6) to the record of the state court proceedings, the Eighth Circuit concluded that "the state court judgment against [the

debtor] implicitly contained a finding of malice." *Id.* at 744.

In *Siemer v. Nangle (In re Nangle)*, 274 F.3d 481 (8th Cir.2001), the creditor obtained a jury award, including punitive damages, for violation of a consumer fraud statute. The jury was instructed that it had to find debtor's conduct was "willful and wanton," meaning that his conduct "shows actual or deliberate intention to harm or which, if not intentional, shows an utter indifference to or conscious disregard of a person's own safety and the safety of others." *Id.*, 274 F.3d at 483. Because the creditor's causes of action did not involve matters of safety, the court concluded that "the jury's verdict could only have been based on a conclusion that [the debtor's] acts involved an actual or deliberate intention to harm [the creditor]." *Id.* at 484. The court stated the conduct was malicious within the meaning of § 523(a)(6) because it was "targeted at the creditor." *Id. See also Corn v. Marks (In re Marks)*, 192 B.R. 379 (E.D.Pa.1996) (finding of intentional interference with economic opportunity was given preclusive effect as a determination of willful and malicious injury), *aff'd*, 106 F.3d 386 (3d Cir.1996).

 In some cases, conduct may be ambiguous, so that the bankruptcy court would need a more complete record of the state court proceedings to determine whether the issue of intentional injury had been already decided. For example, if a creditor was injured during medical treatment, as in *Geiger*, the record would need to show a higher level of culpability than negligence or recklessness. *In re Geiger*, 113 F.3d at 849. *See also In re Miera*, 926 F.2d at 744 (record supported finding debtor knew physical contact with creditor was unwanted). In Foushee's case, the jury instructions, based on Iowa Code § 272C.8, are sufficiently specific for this

court to find that relitigation of "willful and malicious injury" is precluded.

The jury found that Foushee dismissed Suggitt from her employment or discriminated against her in relation to her employment. Counsel for Foushee stated at the hearing on this matter that it is not significant that the finding was made in the alternative. The jury found he acted "because she filed a complaint with the Podiatry Board or because she presented testimony or other records to the Podiatry Board." This finding establishes malice and intentional injury under the Eighth Circuit standard. Iowa Code § 272C.8 was designed to promote a willingness to provide information in order to protect a public interest. *See Doe v. Iowa State Board of Physical Therapy & Occupational Therapy Examiners*, 320 N.W.2d 557, 560 (Iowa 1982) (discussing statutes previously codified in Chapter 258A). The statute codifies a particular form of retaliatory discharge. *See Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 683 (Iowa 2001) (describing the common law cause of action of wrongful discharge or retaliatory discharge as a public policy exception to at-will employment doctrine). "A wrongful or retaliatory discharge in violation of public policy is an intentional wrong committed by the employer against an employee who chooses to exercise some substantial right." *Niblo v. Parr Mfg., Inc.*, 445 N.W.2d 351, 355 (Iowa 1989). The statute provides the same remedy to an employee who suffers discrimination stopping short of dismissal. Foushee targeted Suggitt for her cooperation with the Podiatry Board. He intended to harm her by depriving her of employment rights. The court concludes that Suggitt's claim against Foushee is a debt for willful and malicious injury.

IT IS ORDERED that plaintiff's motion for summary judgment is granted. The debt owed to Dianna L. Suggitt, arising

out of her counterclaim against Tommy N. Foushee in the Iowa District Court for Woodbury County, Case No. LACV 120442, is excepted from his discharge pursuant to 11 U.S.C. § 523(a)(6).