# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1791

_____

Twin City Pipe Trades Service Association, Inc.,

*Plaintiff - Appellee,*

v.

Wenner Quality Services, Inc., a Minnesota corporation, doing business as Mr.
Rooter of South Central MN,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 9, 2017
Filed: August 29, 2017

_____

Before SMITH, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Twin City Pipe Trades Service Association is attempting to recover unpaid
fringe-benefit contributions allegedly due under a collective bargaining agreement.
The district court granted summary judgment for the Association on the ground that
Wenner Quality Services, Inc., was precluded by a previous lawsuit from disputing
liability for the contributions as an alter ego of a signatory of the agreement. The

court then awarded damages and injunctive relief to the Association. We agree that the Association was entitled to judgment on liability, but we conclude that the court erred in awarding certain damages to the Association. Accordingly, we affirm in part and reverse in part.

I.

In 2004, Shawn and Sara Wenner purchased Mankato Plumbing & Heating, Inc. The Wenners were Mankato Plumbing's only shareholders. Mankato Plumbing was party to a collective bargaining agreement with two local unions for plumbers and pipefitters. In 2006, the Wenners purchased a Mr. Rooter franchise and signed the franchise agreement individually as the designated franchisees. They operated the franchise using Mankato Plumbing's facility, employees, and equipment, while Mankato Plumbing paid fringe-benefit contributions pursuant to the CBA on behalf of Mr. Rooter.

In 2010, the Wenners reorganized their businesses. At the end of January, Mankato Plumbing ceased operations, and the Wenners formed S&S Thermo Dynamics, Inc., to take over the commercial plumbing operations. Around that same time, the Wenners formed Wenner Quality Services, Inc., (WQS) to provide residential plumbing services. Shawn wrote to the unions that Mankato Plumbing was ceasing operations, but that S&S would assume Mankato Plumbing's responsibility under the CBA. In a separate letter, Shawn informed the unions that Mr. Rooter would be discontinuing its operations; in fact, however, WQS continued to use the Mr. Rooter name in its residential plumbing operations.

In 2011, the Association, which served as a trustee responsible for collecting the fringe-benefit contributions due under the CBA, discovered that Mr. Rooter was still operating. It sued S&S, Mankato Plumbing, and Shawn Wenner under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132, 1145, alleging that

they had failed to pay fringe-benefit contributions arising from work performed for Mr. Rooter from February 2010 onward. The Association did not sue WQS in the S&S Litigation, because it was not aware of WQS until Shawn Wenner disclosed that entity's existence after the deadline to amend pleadings had passed.

The defendants in the S&S Litigation moved for summary judgment, and the district court held a hearing. The court granted summary judgment for Mankato Plumbing, because Mankato Plumbing was no longer doing business, and there was no claim that the entity failed to make contributions before it ceased operations in January 2010. The court, however, denied S&S's motion for summary judgment and effectively granted summary judgment for the Association on the issue of liability. The court concluded that S&S, as the successor signatory to the CBA, and WQS, as Mr. Rooter's operator, were alter egos of one another. In other words, the court determined that the companies were independent of each other in form only, and that they were used as a subterfuge to justify wrongdoing. On that basis, the court held S&S liable for the past-due contributions on behalf of Mr. Rooter.

In a subsequent order, the district court clarified that "[h]aving resolved the liability issue in favor of [the Association], . . . the only outstanding issue before the Court is the amount of damages owed to [the Association]." The court never made an award of damages, however, because S&S and Shawn Wenner filed for bankruptcy, and the case was administratively terminated.

In 2014, the Association brought this action under ERISA against WQS and Sara Wenner. The complaint sought the same unpaid fringe-benefit contributions that the Association pursued in the S&S Litigation, plus injunctive relief. The district court dismissed Sara Wenner pursuant to a stipulation after she filed for bankruptcy. On cross-motions for summary judgment, the district court then determined that issue preclusion prevented WQS from disputing its liability as an alter ego of S&S.

-3-

The court awarded the Association unpaid fringe-benefit contributions, interest, and attorney's fees and costs, but denied its request for liquidated damages. The court also enjoined WQS from refusing to submit monthly fringe-benefit contributions to the Association for Mr. Rooter employees or other covered employees for so long as WQS has a contribution obligation. The court ordered WQS to post a bond of $18,000 "as a security for three months' future contributions." The court later issued an order amending its judgment, clarifying its previous judgment and stating more broadly that WQS was enjoined from failing to comply with its obligations under the CBA. The injunction forbade WQS from refusing to submit monthly reports of hours worked by Mr. Rooter employees or other covered employees, and refusing to submit monthly fringe-benefit contributions for so long as WQS has a contribution obligation.

II.

WQS argues on appeal that the district court erred by applying offensive collateral estoppel on the issue of alter ego liability. The general rule on issue preclusion, also known as collateral estoppel, is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) (alteration in original) (quoting Restatement (Second) of Judgments § 27 (1982)). A court should not, however, apply offensive collateral estoppel when it would be unfair to a defendant. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979).

Two elements of issue preclusion are undisputed: WQS does not dispute that the issue of alter ego liability is the same in both cases or that the alter ego determination was essential to the prior judgment. A third element is identity of the parties. Although WQS was not a party in the S&S Litigation, issue preclusion can

-4-

apply "when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996). A closely held corporation is in privity with its shareholder, *see* Restatement (Second) of Judgments § 59(3)(b) & cmt. e (1982), and WQS conceded at oral argument that it is in privity with Shawn Wenner, who was a party in the S&S Litigation. Shawn Wenner, in turn, was also in privity with S&S, another party in the first case. As such, WQS can be bound by the prior judgment.

But WQS disputes a fourth element. The company argues that there was no valid and final judgment in the S&S Litigation, because the court never awarded damages and entered a final judgment. Issue preclusion, however, has been applied "to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief." *In re Nangle*, 274 F.3d 481, 485 (8th Cir. 2001) (internal quotations omitted) (quoting 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4434 (1981)). "[F]inality for purpose[s] of appeal under [28 U.S.C. § 1291] is not necessarily the finality that is required for issue preclusion purposes." *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544, 563 (8th Cir. 1990). Quoting Judge Friendly, this court observed that "[f]inality in the context [of issue preclusion] may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id*. (alterations in original) (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)).

We conclude that the district court's orders regarding its alter ego determination in the S&S Litigation constitute a valid and final judgment for purposes of issue preclusion. The court in the first case gave the parties ample opportunity to be heard on alter ego liability. Following briefing and a hearing, the court concluded that S&S and WQS were alter egos, and the court filed a reasoned order that explained the determination. Although the amount of damages remained

unresolved, there was no reason to believe that the court's judgment on liability was "tentative or likely to be changed." *In re Nangle*, 274 F.3d at 485.

WQS complains that Shawn Wenner and S&S had no opportunity to appeal in the S&S Litigation, but the unavailability of appellate review does not by itself make issue preclusion inappropriate. *In re Nangle*, 274 F.3d at 485; *see Johnson Steel St. Rail Co. v. William Wharton, Jr., & Co.*, 152 U.S. 252, 261 (1894). It is "merely one factor to consider in determining whether issue preclusion applies." *John Morrell & Co.*, 913 F.2d at 563. Here, the inability of Shawn Wenner and S&S to appeal in the S&S Litigation was a product of their own making: They voluntarily filed for bankruptcy, thus triggering an automatic stay and leading the case to be administratively terminated. Under these circumstances, the absence of appellate review in the first case did not require the court to allow relitigation of the alter ego determination. *Cf. Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 360-61 (3d Cir. 1999).

WQS argues that aside from the traditional elements, issue preclusion is inapplicable when the underlying legal issue involves an alter ego determination. In *Crest Tankers, Inc. v. National Maritime Union of America*, 796 F.2d 234 (8th Cir. 1986), this court concluded that collateral estoppel on a determination of alter ego status was inappropriate. In that case, the second court faced a dispute about whether there was privity between the party who lost in the first case and the parties against whom preclusion was asserted on alter ego liability in the second. This court observed that "the procedural issue of privity is, in essence, also the substantive issue to which [the defendant] would apply collateral estoppel: Are these entities so closely allied as to be considered the same?" *Id*. at 239. Because of "[t]he circularity involved in answering this question," the court declined to apply collateral estoppel. *Id.*

This case does not raise the same problem of circularity. WQS is indisputably in privity with Shawn Wenner, a party in the first case, because Shawn Wenner is one

of the two shareholders of WQS. *See In re Gottheiner*, 703 F.2d 1136, 1139-40 (9th Cir. 1983); Restatement (Second) of Judgments § 59(3)(b) & cmt. e. For the same reason, Shawn Wenner is in privity with S&S. S&S contested alter ego liability in the first case, and Shawn Wenner had every incentive to do so, either on his own or as the president and majority shareholder of S&S. The determination that WQS was in privity with a party in the first case is therefore separate from the determination whether S&S and WQS are alter egos of one another.

For these reasons, we conclude that all of the elements required to apply issue preclusion are present here. WQS does not raise any additional fairness considerations that would preclude application of the doctrine in this circumstance. We therefore affirm the district court's determination that WQS is liable for the unpaid fringe-benefit contributions due from Mr. Rooter.

### III.

WQS next argues that the district court erred in granting certain damages and relief to the Association. We conclude that the Association has a right to collect contributions under the CBA, but that two categories of damages were not authorized by ERISA and that the award should be reduced accordingly. We also uphold the district court's grant of injunctive relief.

### A.

WQS first argues that the Association had no right to collect certain benefits under the CBA, so it lacks Article III standing to bring certain claims. This is not really an argument about standing: the Association was injured by not receiving the contributions, the injury was caused by WQS's non-payment, and an award of

-7-

damages would remedy the injury. WQS is actually pressing an argument on the merits—*i.e.*, that the Association has no right to the contributions.

The CBA provides for the collection of ten categories of contributions, and six are in dispute: Credit Union, Working Fee Fund, TCPT Pension, Pension Supplement, International Training Fund, and Industry Fund benefits. The CBA states that employers must send the Industry Fund payments to the Minnesota Mechanical Contractors Industry Fund. The CBA does not otherwise address where the disputed payments should be sent or who should collect these payments.

The "practice, usage and custom" of the parties are significant when interpreting a CBA. *Transp.-Commc'n Emps. Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 161 (1966). The evidence shows that the Association traditionally collected the disputed payments. The Association's executive administrator averred that the Association collects all of the disputed benefits, and that employers subject to the CBA must submit one check to the Association for all of the relevant contributions. S&S, the successor signatory to the CBA, sent the disputed payments to the Association. There is no evidence that the disputed payments were sent to any other organization. Although the CBA provided that certain payments should go to the Minnesota Mechanical Contractors Industry Fund, the administrator of that fund denied collecting any contributions. The Association therefore has a right to recover these payments.

B.

ERISA permits a fiduciary of a plan, like the Association, to bring a civil action to enforce the obligations arising under a plan or a collectively bargained agreement. 29 U.S.C. §§ 1132(a)(3), (g)(2), 1145. Under ERISA, "'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan

-8-

or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." *Id.* § 1002(3). Because § 1132 is limited to civil actions enforcing obligations under a "plan," any contributions that fall outside the definition of an employee benefit or employee pension benefit plan are not recoverable in an ERISA action. *See U.A. Local No. 467 Pension Tr. Fund v. Hydra Ventures Inc.*, No. C-12-346, 2013 WL 1007311, at *9-10 (N.D. Cal. Mar. 13, 2013); *Williams v. Salt City Painting, Inc.*, No. 91-CV-0320, 1992 WL 265944, at *13 (N.D.N.Y. Oct. 1, 1992).

The Association may recover only unpaid contributions to a plan established for a purpose specified in the statute. These purposes include providing retirement income to employees, and providing participants with medical benefits, benefits in the event of sickness, accident, disability, death or unemployment, or other benefits, such as vacation benefits, training programs, and scholarship funds. *See* 29 U.S.C. § 1002(1), (2).

WQS contends that the Association was not entitled to recover the Credit Union, the Working Fee, and the Industry Fund contributions, because these contributions do not arise under an ERISA plan. The district court thought WQS raised this argument too late in the litigation, but the argument was timely raised in response to the Association's motion for judgment, because that is when the amount of damages was ripe for resolution. At oral argument in this court, the Association conceded that the Working Fee and the Industry Fund do not arise under a "plan" as defined by ERISA, and thus are non-ERISA damages. Therefore, unpaid contributions due to these funds should not have been awarded as damages in this ERISA lawsuit.

As to the Credit Union fund, the Association presented evidence that contributions served to fund vacation benefits, a permissible element of an employee welfare benefit plan. *See* 29 U.S.C. § 1002(3). An official of the Minnesota

Mechanical Contractors Association averred that contributions to vacation funds "include[] the credit union contributions." The 2008 Working Agreement similarly refers to "Credit Union and Vacation/Savings Requirements." Thus, we conclude that the court properly allowed the Association to recover these ERISA-based damages.

C.

WQS also contends that the district court erred in granting a permanent injunction. ERISA permits a fiduciary of a plan to seek recovery of unpaid contributions, interest on those contributions, reasonable attorney's fees and costs of the action, and such other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2). Equitable relief can include enjoining a recalcitrant employer from failing to pay contributions to an ERISA fund arising under a collective bargaining agreement. *Laborers Fringe Benefit Funds Detroit & Vicinity v. Nw. Concrete & Constr., Inc.*, 640 F.2d 1350, 1351-53 (6th Cir. 1981) (per curiam). Citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996), and *Wald v. Southwestern Bell Corp. Customcare Medical Plan*, 83 F.3d 1002 (8th Cir. 1996), WQS contends that injunctive relief was inappropriate here because the district court provided adequate relief in the form of money damages. In *Varity Corp.*, the Court stated that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" 516 U.S. at 515. But here, the Association did not seek only payment for past unpaid contributions; it sought an order requiring WQS to fulfill its ongoing obligations under the CBA. The injunction provides a separate remedy, independent of damages, to ensure that WQS will pay future fringe-benefit contributions. Therefore, the district court did not err in granting injunctive relief.

*     *     *

-10-

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part. The case is remanded for the district court to exclude contributions due to the Working Fee and Industry Fund from the damages award, and to reduce the award of interest accordingly.

_____